441 P.2d 553

Elizabeth POWELL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Phoenix School District No. 1, Respondents.

No. 1 CA–IC 156.

Court of Appeals of Arizona.

May 29, 1968.

Rehearing Denied June 26, 1968.

Review Granted Sept. 17, 1968.

Morgan & Jerome, by Donald J. Morgan, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Noel J. R. Levy, Phoenix, for respondents.

STEVENS, Judge.

The petitioner is a teacher and the basic issue presented to the Court is the proper method of computing her average monthly wage.

The industrial incident in question occurred on 24 October 1966 and The Industrial Commission properly assumed jurisdiction in relation to an "accident arising out of and in the course of employment". A.R.S. § 23–1041, subsec. A. Prior to the date in question, the petitioner had rendered the necessary service as a "probationary teacher" and had acquired the status of a "continuing teacher" as those terms are defined by A.R.S. § 15–251. On 6 March 1956, the petitioner and the respondent school district entered into a continuing teacher's contract. The contract did not specify the number of days, weeks or months that the petitioner would be employed during any fiscal or school year. In relation to the matter of salary, the contract contained the following paragraph:

"2. SCHOOL DISTRICT HEREWITH AGREES to pay to Teacher under the 'Payment Option' selected by Teacher such salary as shall be in accordance with the Teacher's Salary Schedule and 'Payment Option' as adopted by the Board of the District and as agreed upon between Teacher and School District each year by endorsement, in accordance with the form of endorsement attached hereto as a part of this contract."

There are annual endorsements to the contract and in relation to the industrial incident in question, the petitioner was under contract with the respondent school district by virtue of an endorsement which was duly executed by all concerned parties on 1 March 1966. This endorsement was pursuant to the above quoted paragraph of the

contract. The endorsement provided for her employment as a teacher "for the period beginning August 29, 1966 and ending June 2, 1967 * * *". The petitioner's salary was specified in the sum of $9,039.-50. The endorsement further provided:

> "The salary above quoted is to be paid in the following manner:

> "For services beginning August 29, 1966, through and inclusive of September 2, 1966, the sum of $162.58 payable on September 9, 1966; 8 additional biweekly payments of $455.23; the last payment being made on December 30, 1966; then, beginning January 13, 1967, 11 additional biweekly payments of $455.23; and a final payment of $227.55 being made at the close of the school term."

As a result of the accident the petitioner was absent from her employment more than seven days and became entitled to some compensation in addition to her medical benefits. The claim was processed administratively without a formal hearing and on 5 December 1966, The Industrial Commission entered its "FINDINGS AND AWARD FOR CONTINUING BENEFITS AND ESTABLISHING AVERAGE MONTHLY WAGE". By this document The Industrial Commission fixed the petitioner's average monthly wage in the sum of $753.29. This Award contained a 20 day clause pursuant to Industrial Commission Rule 37. It is admitted by The Industrial Commission that the petitioner complied with Rule 37 and made a timely request for a formal hearing. The only issue raised by the petitioner was the correctness of the determination of her average monthly wage.

■ The Industrial Commission has called our attention to this Court's opinion in Noblitt v. Industrial Commission, 6 Ariz.App. 303, 432 P.2d 162 (1967), review denied, in relation to this Court's holding concerning intermediate awards and orders. The Industrial Commission requests that this Court include in the current opinion a statement as to whether the wage determination would have become res judica-

ta had the petitioner failed to act in a timely manner in requesting a formal hearing. We decline to undertake a discussion of this matter as it is not in issue.

The requested formal hearing was held and the Award of 5 December 1966 was affirmed. A timely review has been processed to this Court.

It is urged by the petitioner that she was employed for approximately nine months and that her average monthly wage was approximately ⅑th of the salary agreed upon. It is urged by The Industrial Commission that the salary agreed upon provided her with a livelihood for 12 months and that the average monthly wage set forth in the Award, a figure reached by dividing the agreed salary by 12, is the correct figure.

■ The average monthly wage is the controlling figure in computing compensation to be allowed in relation to industrial accidents. A.R.S. § 23–1041 provides, in part:

> "Basis for computing compensation

> "A. Every employee * * * who is injured by accident arising out of and in the course of employment, * * * shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

> *    *    *    *    *    *

> "D. The term 'monthly wage' means the average wage paid during and over the month in which the employee is * * * injured."

The foregoing definitions were re-enacted by the Legislature in the 1963 amendment of § 23–1041. Prior to the enactment there had been numerous Supreme Court decisions addressed to the question of the proper computation of the average monthly wage in relation to the fact situation then presented to the Court. Several of these decisions have been reviewed in Mickelson v. Industrial Commission, 7 Ariz.App. 182, 437 P.2d 666 (1968). Possibly the difficulty in reaching a set formula has persuaded

the Legislature to leave this difficult problem to The Industrial Commission and to the courts depending upon the facts of each individual case.

The Industrial Commission urges that a review of the school laws requires the method of compensation which was used by The Industrial Commission in this case.

Section 15–301, subsec. A, is as follows:

"School year; school month; holidays

"A. The school year shall begin July 1 and end June 30. A school month is twenty school days, or four weeks of five days each."

Section 15–442, subsec. A(1), at the time in question, read in part, as follows:

"A. The board of trustees shall:

"1. Maintain the schools established by them for a period of not less than eight months in each school year, * * *."

A.R.S. § 15–443, subsec. A, is as follows:

"Employment of school district personnel; limitation

"A. The board of trustees may at any time after the annual election and the qualification of new members, employ and fix the salaries of teachers, principals, janitors, attendance officers, school physician, school dentist, nurses, and other employees necessary *for the succeeding year*. The contracts of all certificated employees shall be in writing and all employees shall be employed subject to the provisions of § 38–481." (Emphasis supplied.)

Section 15–251 is the definition section in the area of teacher tenure and subsection B reads as follows:

"B. For the purpose set forth in subsection A, paragraph 2, the major portion of a school year shall be the equivalent of *a year of employment* in a school district." (Emphasis supplied.)

In 1965, A.R.S. § 23–351 was amended by adding subsection B(2) which reads as follows:

"2. In case of certificated employees of school districts under contract pursuant to § 15–443 and clerical employees, *the annual salary* may be prorated in any number of payments, and all such payments still due at the close of the school year may be paid in a lump sum." (Emphasis supplied.)

The evidence in the formal hearing established that the petitioner was free to teach during the portion of the year not expressly covered by the contract in which event she would have a separate employment contract or endorsement. It was also established that the petitioner was free to engage in unrelated employment during the period not covered by the dates set forth in the contract. In other words, except for the times specified in the contract or the endorsement, her time was her own. All participants concede that in the absence of summer teaching employment with the respondent school district, petitioner would not be covered by the respondent's workmen's compensation policy if she should be injured during that portion of the year not embraced within the dates set forth in the above quoted endorsement.

The evidence established that some personnel of the respondent school district received a salary for each of the 12 months of the "school year" A.R.S. § 15–301, subsec. A, this being the fiscal year of all school districts. A.R.S. § 15–443, subsec. A specifies some of the personnel who might receive a salary for each of the 12 months of the year and an examination thereof indicates that such personnel might be or might not be educators or intimately associated with the education process.

There was testimony with reference to the manner in which a school district could pay salaries under the provisions of A.R.S. § 23–351, subsec. B(2). Teachers could be paid in 24 semi-monthly installments. Teachers could be paid during the school term in 2 semi-monthly installments for each month, each month equaling ½₂th of the overall salary with a "balloon payment" being made at the time of the last payment during the school term. Teachers could be paid in the same manner in which

the petitioner was paid. These various options are within the discretion of the individual school districts.

In its Award The Industrial Commission held that the petitioner's employment was seasonal. Seasonal employment is defined in Pettis v. Industrial Commission, 91 Ariz. 298, 372 P.2d 72 (1962). In our opinion the *Pettis* definition does not apply to the teaching profession and we hold that petitioner's employment was not seasonal.

We hold that the petitioner's employment was a matter of contract, that she was employed for approximately nine months during the "school year" in question and that her average monthly wage was $910.46, being the total of the two semi-monthly pay checks of $455.23 each.

The Award is set aside.

CAMERON, C. J., and DONOFRIO, J., concur.