451 P.2d 37

Elizabeth POWELL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Phoenix School District No. 1, Respondents.

No. 9362–PR.

Supreme Court of Arizona.

In Banc.

Feb. 27, 1969.

**258**

Donald J. Morgan, Phoenix, for petitioner.

Noel J. R. Levy, Phoenix, for respondent Industrial Commission of Arizona; Robert D. Steckner, Robert K. Park, Arthur B. Parsons, Jr., Glen D. Webster, Phoenix, Spencer K. Johnston, Tucson, Dee-Dee Samet, Donald L. Cross, William E. Smith, Mchael A. Lasher, Jr., Phoenix, of counsel.

McFARLAND, Justice.

This case is before us on a petition of the respondent Industrial Commission of Arizona for a review of a decision of the Court of Appeals, 7 Ariz.App. 518, 441 P. 2d 553, which set aside an award of the Industrial Commission. Decision of the Court of Appeals affirmed.

The petitioner, Elizabeth Powell, a teacher, entered into a contract with the respondent School District No. 1. The contract provided that her employment as a teacher would begin on August 29, 1966, and end June 2, 1967, at a specified salary of $9,039.50, to be paid in the following manner:

> "For services beginning August 29, 1966, through and inclusive of September 2, 1966, the sum of $162.58 payable on September 9, 1966; 8 additional biweekly payments of $455.23; the last payment being made on December 30, 1966; then, beginning January 13, 1967, 11 additional biweekly payments of $455.23; and a final payment of $227.55 being made at the close of the school term."

On October 24, 1966, while in the scope of employment, petitioner accidently slipped and injured herself. She properly filled in a claim with the Industrial Commission. The Commission, in its award, computed her average wage on a 12-month basis and fixed the same at $753.29 per month. This was arrived at by dividing the $9,039.50 by the twelve months. The petitioner contends that the total annual salary should have been divided by nine months. The Court of Appeals, Division One, reversed the award on the basis that she was employed for approximately nine months during the school year, holding that petitioner's employment was a matter of contract, that her average monthly wage should have been for approximately nine months, and that her average wage should have been determined on that basis. This Court granted the respondent's petition for review in order that we might further examine the question of the computation of "average monthly wage under A.R.S. § 23–1041, as amended;" namely, whether the petitioner's wage should be determined by the use of the 12-month period or the approximately 9-month period, such period representing the actual period in which the petitioner was employed as a teacher. Section 23–1041, A.R.S., as amended, provides as follows:

> "A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

> "B. If the injured or killed employee has not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such amount as, having regard to the previous wage of the injured employee or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident.

> "C. If the employee is working under a contract by which he is guaranteed an amount per diem or per month, notwithstanding the contract price for such labor, the employee or his subordinates or employees working under the terms of such contract or his or their dependents in case of death, shall be entitled to receive compensation on the basis only of the guaranteed wage as set out in the

contract of employment, whether paid on a per diem or monthly basis, but in no event shall the basis be less than the wages paid to employees for similar work not under contract.

"D. The term 'monthly wage' means the average wage paid during and over the month in which the employee is killed or injured.

"E. Notwithstanding any other provision of this chapter, in computing the average monthly wage there shall be excluded from such computation of amounts of wages or other compensation for services in excess of one thousand dollars per month.

"F. Prior to determination of average monthly wage, compensation shall be paid on a basis of a minimum monthly wage of two hundred dollars for employees twenty-one years of age or over." [1]

In Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217, in a rehearing on an interpretation, we held:

"The term 'monthly wage' shall mean the average wage paid during and over the month in which such employee is killed or injured. If the injured or killed employee has not been continuously employed for the period of thirty (30) days immediately preceding the injury or death, the average monthly wage shall be such sum as, having regard to the previous wage of the injured employee, or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident. If the employee is working under a contract by which he is guaranteed an amount per diem or per month, notwithstanding the contract price for such labor, then said employee or his subordinates or employees working

under the terms of such contract, or his or their dependents in case of death, shall be entitled to receive compensation on the basis only of the guaranteed wage as set out in said contract of employment, whether paid on a per diem or a monthly basis, but in no event shall the basis be less than the wages paid to employees for similar work not under contract. * * *

* * * * * *

"From the above definition of the word 'average' we see conclusively that an 'average monthly wage' may not be ascertained from wages earned in a single month and certainly cannot be ascertained from wages earned in a period of less than a month. * * *

"The legislature said that the 'average monthly wage shall be such sum as * * * reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident,' and provides that in determining what constitutes an 'average monthly wage' the commission must have 'regard to the previous wage of the injured employee, or of other employees of the same or most similar class of work in the same or most similar employment in the same or neighboring locality.'

"In arriving at what reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time he is injured, other factors than the daily, weekly, or monthly wage or scale of wages must be considered. The opportunity afforded for work in that particular employment whether it be intermittent or seasonal or whether it is continuous the year round is an important factor to be considered.

* * , * * * *

"The injunction in section 56–952, supra, [A.C.A.1939] is that consideration

<hr>

[1]. The only change made in the 1963 amendment to A.R.S. § 23–1041 was the addition of subsection F.

must be given either to the 'previous wage' of the injured person or to the previous wage of other employees in the same or most similar class in the same or most similar employment in the same or neighboring locality, thus providing a method for determining what constitutes an average monthly wage under almost every conceivable situation.

"First: By considering the 'previous wage' of the injured person if he had been employed a length of time reasonably sufficient in that neighborhood in the same employment to enable the commission to determine what his average monthly wage would be;

"Second: If he had just begun work in that employment in the neighborhood and an insufficient length of time had elapsed to enable the commission to ascertain his average monthly wage from his previous earnings then the commission may, under the clear intent of the legislative enactment determine said average monthly wage from the previous wage of other employees in the same or most similar class working in the same or most similar employment in that or in the neighboring locality." 69 Ariz. at pp. 175, 176, 177, 178, 211 P.2d 217, at p. 221.

In the instant case the petitioner contends that her average wage is governed by subsection C of § 23–1041, stating that it is set out in the contract of employment and therefore must be computed on a 9-month basis.

■ Because petitioner has worked more than thirty days prior to the injury, the "average monthly wage" may not be ascertained from wages earned in a single month. Kennecott Copper, Inc. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839; Pettis v. Industrial Commission, 91 Ariz. 298, 372 P.2d 72.

■ The term "average monthly wage" in subsection A of § 23–1041 refers to the average wage where the claimant has worked more than thirty days prior to the injury. Therefore, we look to subsection A. It states that the employee who is entitled to compensation shall receive it on the basis of the "average monthly wage." The legislature, however, has omitted any formula to guide the Commission in computing that average.

■ In illustrating further the point that the legislature has seemingly meant to omit any formula, we examine subsection B of § 23–1041. This subsection prescribes a procedure to follow only where the employee "has not been continuously employed for the period of thirty days immediately preceding the injury." It states that the payments shall "reasonably represent the monthly earning capacity." This subsection reflects the characteristics of subsection A in that neither give any criteria for computing the average wage. In examining other state statutes we find many, if not most states, set forth the method for computation in the statute. Therefore, it is reasonable to conclude that A.R.S. § 23–1041 allows the Commission to determine the basic unit of compensation which is equitable in the respective case.

In Pettis v. Industrial Commission, supra, we held that the term "monthly wage" as defined in subsection D of A.R.S. § 23–1041, could only be used where the employee has worked for a period of less than thirty days. We also said:

"In computing the average wage of an injured employee the period of time over which the earnings are to be computed is generally specified by statute. Most statutes use the words 'average weekly wage' as the basis for computation and prescribe the formula by which the average weekly wage is to be determined. The computation of the average weekly wage is frequently based upon actual wages during the preceding year, if the employee's employment has been substantially continuous. Larson, Workmen's Compensation Law § 60.00. However, under our Workmen's Compensation Act the average monthly wage must be determined, not the average weekly wage. In addition, unlike most statutes, our statute fails to specify the period

of time over which the earnings are to be computed. This Court has said that where the employee has been employed for more than thirty days at the time of his injury or death the 'average monthly wage' may not be ascertained from wages earned in a single month. Steward v. Industrial Commission, supra; Kennecott Copper Inc. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839 (1944).

"In the instant case the Commission, in order to ascertain the petitioner's 'average monthly wage', divided by twelve the actual total earnings of the petitioner during the twelve-month period prior to his injury. In the absence of some other statutory direction for computing the 'average monthly wage', we cannot say that the method adopted by the Commission constituted error.

"However, the Commission did err in computing the petitioner's average monthly wage in including the two-month period during which time petitioner did not work due to a shutdown by his employer." 91 Ariz. at p. 301, 372 P.2d 72, at p. 74.

The respondent contends that Pettis v. Industrial Commission, supra, supports its position that the employment was seasonal in that it was held that the two-month period during which time the petitioner did not work due to a shutdown should not have been counted in computing the average monthly wage as it was not due to seasonal employment. However, the Pettis case specifically states that unlike most of the statutes in other states our statutes fail to specify the period of time over which the earnings are to be computed. The Industrial Commission used the 12-month basis in its computation. The Court said that because the statute fails to mention a formula for computing the wage, it could not say that the method adopted by the Commission constituted error. Again there is an inference that the Commission has discretion in computing the decisive average.

The petitioner contends that the Pettis case supports her position in that the Court held the Commission erred in using the 12-month average wage which included the two months claimant did not work due to shutdown of his employer. In defining "seasonal employment," the Pettis opinion is emphasizing that in order for employment to be seasonal, a characteristic of that employment must be that the employee work *only* part of the year, and that it be the *type* of employment which dictates the seasonal character of the work. In making such a determination we should consider the purpose of the law.

In West v. Industrial Commission of California, 79 Cal.App.2d 711, 180 P.2d 972, the Court, in recognizing the purpose of workmen's compensation, said:

"In California as elsewhere a compensation award consists of a money payment and medical care. Western Metal Supply Co. v. Pillsbury, 1916, 172 Cal. 407, 419, 156 P. 491, Ann.Cas.1917E, 390; Dodd, Adm. of Workmen's Compensation, 1936, p. 41. The purpose of the award is not to make the employee whole for the loss which he has suffered but to prevent him and his dependents from becoming public charges during the period of his disability. Union Iron Works v. Industrial Acc. Comm., 1922, 190 Cal. 33, 39, 40, 210 P. 410. In short the award transfers a portion of the loss suffered by the disabled employee from him and his dependents to the consuming public. Western Indem. Co. v. Pillsbury, 1915, 170 Cal. 686, 693, 151 P. 398. Complete protection is not afforded the employee from disability because this would constitute an invitation to malinger or to be careless on the job as he would then lose nothing in assuming a disabled status. 1 Schneider, Workmen's Compensation Law, Per.Ed. 1941, p. 6." 180 P.2d at pp. 978, 979.

Section 23–1044, A.R.S., sets forth the basis for payment on temporary partial disability at sixty-five per cent of the difference between the wages earned before the

injury and the wages which the injured person is able to earn thereafter. Section 23–1045, A.R.S., sets forth the basis of temporary total disability where there is not a dependent residing in the United States at sixty-five per cent of the average monthly wage and an increase of $10.00 per month for each dependent during the time provided for payment.

It is evident that in Arizona, as in California, the purpose of an award is not to make the employee whole for the loss which he has suffered but to at least take care of the major portion of the loss during the disability. If a teacher with a contract similar to that of the instant case were injured at the beginning of the school term; namely, the 1st of September, and then adjudged to be able to resume normal work on June 1st, and the average wage was made on a 12-month basis on the theory that the employment was in fact "seasonal", there would have been paid industrial insurance for the total sum of $9,039.50 and yet, because of the division by twelve she would only be receiving three-fourths of the benefits for a year.

A.R.S. § 23–981 et seq., the statutes effective at the time of the award, set up the compensation fund and provided that the Commission have full authority to fix the rates,[2] also that "the state compensation fund shall be neither more nor less than self-supporting." § 23–983, subsec. A, A.R.S. Subsection C of § 23–983 provides for the setting up of the fund, the determining of the hazards, different classes of occupations, industries, and fixing the premiums therefor at the lowest rates consistent with the maintenance of a solvent compensation fund, creation and maintenance of a reserve, etc. Under § 23–1006, A.R.S., the Commission was given authority to make contracts of insurance to cover the entire underlying liability of employers insured in the state compensation fund.[3]

In the case of Gene Autry Production v. Industrial Commission, 67 Ariz. 290, 195 P.2d 143, we pointed out that one of the primary duties of the Commission is to insure the solvency of the state fund, that insurance is based upon the law of average and, in referring to the duties of the Commission, we said:

"We, therefore, think it is clear that the intent of the legislature was not to establish a rigid measure, but to lay down flexible rules under which the Commission could establish from the evidence and the facts as they relate to the diversified and seasonal employments of the state a measure by which to evaluate the reasonable, fair, and equitable earning capacity of workmen, both for purposes of assessment of premium and for the payment of compensation benefits, provided that the same measure of value was to be applied as it related to the collection of premium and to payment of compensation benefits. Brisendine v. Skousen Bros., 48 Ariz. 416, 62 P.2d 326, 112 A. L.R. 1089. In other words, we believe the intent of Section 56–952 is to enable the Commission, in its management of the Compensation Fund to apply the law of averages and sound insurance principles, in order that under sound actuarial practice the rate of premium when applied to the basic wage will produce the reserves necessary to enable the Commission to pay the accident, compensation, and death benefits provided in the statute." 67 Ariz. at p. 299, 195 P.2d 143, at p. 149.

Therefore, as stated in Gene Autry Production v. Industrial Commission, supra, the Commission has authority "to evaluate the reasonable, fair, and equitable earning capacity of workmen, both for purposes of assessment of premium and for the payment of compensation benefits, provided that the same measure of value was to be applied as it related to the collection of premium

---

2. As amended, § 23–981 provides that the manager of the state compensation fund shall have full authority over the fund.

3. As amended, § 23–1006 authorizes the state compensation fund to make contracts of insurance.

and to payment of compensation benefits." This was not done in the instant case. We held in Cavness v. Industrial Commission, 74 Ariz. 27, 30, 243 P.2d 459, 462, that:

"* * * Protection to workmen and their dependents is limited to injuries by accident arising out of and in the course of employment and we recognize that in no event must the workmen's compensation law be converted into a general health and accident coverage."

And in City of Phoenix v. Industrial Commission of Arizona, 104 Ariz. 120, 449 P.2d 291 (1969), we said:

"The circumstances must be such that the activity engaged in, at the time of the accident, is an incident of the employment."

■ Therefore, to fix the rate of pay on a 12-month basis would be including three months for which the petitioner is not covered under the contract and under which she could not recover industrial insurance because there would not be an accident which was an incident of employment, there being no employment during this period. Hence it would be inequitable for the school district to have to pay premiums on this 3-month period for which no accident could occur as she was not employed for this period under her contract. The Industrial Commission, however, evidently fixes rates on the entire amount of the contract which, in the instant case, was approximately for a 9-month period. The Industrial Commission likewise should fix the average monthly wage on the basis of the 9-month contractual period of employment. The Commission, therefore, had full authority to fix a rate of compensation for payment on a monthly basis as provided in a contract, as in the instant case.

■ In Pettis v. Industrial Commission, supra, we held it was not proper to include the 2-month period during which time the petitioner did not work due to the shutdown of his employer. In the instant case, it would be equally unfair to make such inclusion for a period of time not covered in the contract by calling it seasonal employment. Certainly, as pointed out by petitioner and which was supported by the evidence, there is school work in the summer. A few schools are operated in the summer, as well as other work which a teacher might secure. If injured in this other work, the employer would be the one who would be paying the compensation for, that period of time. Respondent points out the latitude of the schools in the employment of teachers. We agree that a school could make a contract for twelve months employment. However, this was not done in the instant case and the Industrial Commission is under a duty of providing workmen's compensation rates on the basis of contracts made by the school district, which in the instant case was for approximately a 9-month period.

■ We, therefore, hold that the average monthly wage under petitioner's employment was covered by the contract under which she was employed and that her average monthly wage should be fixed by dividing the amount of the contract by the period of employment, which was approximately nine months.

The decision of the Court of Appeals, holding that the average monthly wage should be fixed on the basis of the contract, is affirmed and the award of the Industrial Commission is set aside.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and HAYS, JJ., concur.