494 P.2d 398

**FLOYD HARTSHORN PLASTERING COMPANY, Inc. and Liberty Mutual Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Arthur O. Martinez, Jr., Respondent Employee.**

**No. 1 CA–IC 540.**

Court of Appeals of Arizona,
Division 1,
Department B.

March 7, 1972.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, by Ralph E. Mahowald, Jr., Phoenix, for petitioners.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

W. Mercer Bouldin, Tucson, for respondent employee, Arthur O. Martinez, Jr.

HAIRE, Presiding Judge.

On this review by certiorari of an award entered by the Industrial Commission in a workmen's compensation proceeding, we are presented with two questions relating to the establishment of a claimant's average monthly wage. The first of these concerns whether the Commission erred in considering part-time wages from different employers in its determination of the average monthly wage of a claimant injured while engaged in his full-time employment. The second question concerns whether, in computing the average monthly wage, the Commission may retrospectively raise the prior wages received by a claimant so as reflect a pay raise received 23 days before his industrial injury.

The pertinent facts are as follows. On June 24, 1969, the claimant was injured in an accident which arose out of and in the course of his employment with petitioner Hartshorn Plastering Company. A claim was filed with the Commission and subsequently accepted by the employer's private insurance carrier, petitioner Liberty Mutual Insurance Company.

The insurance company, as required by A.R.S. § 23–1061, subsec. F (1971) issued its notice of average monthly wage calculation. This was approved by the Commission. The claimant disagreed with the average monthly wage determination made by the insurance carrier and approved by the Commission, and timely requested a hearing to establish his average monthly wage. At the hearing evidence was presented concerning his earnings with his full-time employer, petitioner Hartshorn. In addition evidence was presented concerning earnings from part-time employment with other employers during the period from October 3, 1968 through the date of his injury, June 23, 1969. The part-time employment was in the same occupation as claimant's full-time employment and was generally performed on Saturdays or Sundays, or at nighttime during the week. The part-time employment was not on a regularly scheduled basis, but rather was sporadic in nature. Claimant testified that all of his part-time employers carried industrial insurance.

Following the hearing the hearing officer issued his Decision Upon Hearing and Findings and Award Establishing Average Monthly Wage, finding that the claimant's average monthly wage was $877.50, an amount substantially in excess of that previously set by the insurance carrier. Upon timely request the Commission reviewed, and, by majority vote, affirmed the hearing officer's determination.

The average monthly wage established by the hearing officer was based in part upon the claimant's earnings from his part-time employment, and also took into consideration an upward adjustment of past monthly earnings so as to project retrospectively a pay raise received by claimant 23 days before his industrial injury. This retrospective adjustment was applied to his earnings from the full-time employer and to his earnings from part-time employment.

From our research concerning the questions presented on this review, it is appar-ent that there is much confusion in the Arizona decisions and statutes establishing the principles which govern the determination of an industrially injured workman's average monthly wage. It therefore would appear helpful in bringing some order out of this confusion to analyze the various statutory enactments touching on this subject. The first statute setting forth the principles governing the determination of an injured workman's average monthly wage was a part of Arizona's workmen's compensation act enacted into law as Chapter 83, Ariz.Laws of 1925. Section 70 of that act reads as follows:

"Section 70. Every employee in the employ of an employer within the provisions of this act, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined, in case of his death, shall be entitled to receive the following compensation on the basis of *average monthly wage at time of injury. The term 'average monthly wage' shall be construed to mean the average wage paid during and over the month in which such employee shall be killed or injured.* In the event that such employee shall be working under a contract with his employer under the terms of which said employee shall be guaranteed any amount per diem or per month, notwithstanding the contract price for such labor, then and in such event said employee or his subordinates or employees working under the terms of said contract, or his or their dependents as hereinafter defined in case of death, shall be entitled to receive the following compensation on the basis only of the guaranteed wage as set out in said contract of employment, whether such amount is paid on a per diem basis or on a monthly basis, provided that in no event shall such basis be less than such wages as are paid to employees for similar work not under contract." (Emphasis supplied).

This identical language later became § 1438, Revised Code 1928. It is important to note that under the language of this

original average monthly wage statute, "average monthly wage" is defined in such a manner as to base the determination of the average monthly wage on the average wages paid during and over the *one month period* immediately preceding the employee's injury. There were no alleviating statutory provisions to take care of the workman who had not been continuously employed for the thirty days immediately preceding his injury.

Apparently recognizing the inequity of the original statute, in 1933 the legislature amended § 1438, Revised Code of 1928 so as to read as follows: [1]

"Sec. 1438. *Measure of compensation; total and partial disabilities.* Every employee of an employer within the provisions of this article, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined in case of his death, shall receive the compensation herein fixed, on the basis of monthly wage at time of injury. The term, 'Monthly wage,' shall mean the average wage paid during and over the month in which such employee was killed or injured. *In all instances in which the injured or killed employee had not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such sum as, having regard to the previous wage of the injured employee, or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he was working at the time of the accident.* If the employee was working under a contract with his employer under the terms of which the employee was guaranteed an amount per diem or per month, notwithstanding the contract price for such labor, then said employee or his subordinates or employees working under the terms of said contract, or his or their dependents in case of death, shall be entitled to receive the compensation on the basis only of the guaranteed wage as set out in said contract of employment, whether such amount was paid on a per diem basis or on a monthly basis, provided that in no event shall such basis be less than the wages paid to employees for similar work not under contract." (Emphasis supplied). Chapt. 11, § 6, Ariz.Laws of 1933, First Special Session.

By adding the emphasized language the legislature obviously intended to recognize that in situations not involving continuous employment for the thirty days prior to injury, the Commission could consider other factors, including the wages earned by the claimant in prior months in determining the claimant's "monthly wage" at the time of injury.[2] Another important change was also made by the 1933 amendment, and the purpose of this change is not quite so obvious as the added language discussed above. By this latter change, no longer was the injured claimant to be compensated on the basis of his *"average* monthly wage" at the time of injury. The word "average" is dropped and compensation is to be based upon the claimant's "monthly wage". It is clear that this omission of the word "average" was no mere draftsman's error—the word "average" was also dropped in the definition sentence. A logical explanation of this omission would be the recognition that with the addition of

1. See Justice Lockwood's comment concerning the purpose of the 1933 amendment in Brisendine v. Skousen Brothers, 48 Ariz. 416, 62 P.2d 326 (1936).

2. The Court is aware that there is language in Jackson v. Del E. Webb Construction Co., 61 Ariz. 391, 149 P.2d 685 (1944), to the effect that the words "previous wage" as used in the 1933 amendment have reference only to wages received during the thirty days immediately prior to the injury. The error in this reasoning is pointed out by Justice Phelps in a later decision, Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217 (1949).

the provision allowing the consideration of prior months' compensation (over and above the compensation for the immediately preceding thirty days) in cases involving non-continuous employment during the thirty days immediately prior to the injury, the term "average" became overly confusing since its use would imply that in *all* instances more than one month's compensation would be considered in determining the monthly wage. It could thus be argued that the draftsman therefore dropped the word "average" so as to make clear the continuing legislative intent that in the case where the injured workman had been continuously employed for thirty days immediately preceding his injury, only that month's wage was to be considered in determining this "monthly wage". In any event, regardless of the reason involved, it appears clear that insofar as concerns a continuously employed employee, the concept of "average" was not a part of the statutory basis for the computation of such an employee's monthly wage basis immediately subsequent to the 1933 amendment.

Following the 1933 amendment to the statutory provisions dealing with the monthly wage base computation, the Commission was faced with only two methods of wage computation: (1) if the injured workman had been continuously employed for the thirty days immediately prior to his injury, his "monthly wage" would be based exclusively on the wages earned during that period; and (2), if he had not been continuously employed during that immediately preceding thirty days, then other factors, including his previous wages, could be considered. However, in 1939 the statute was again amended. This time the legislature reinserted the word "average" in the

first sentence of the section so as to read as follows:

"Sec. 1438. *Measure of Compensation; Total and Partial Disabilities.* Every employee of any employer subject to the provisions of this article, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined, in case of his death, shall receive the compensation herein fixed, on the basis of *average* monthly wage at the time of injury. The term 'monthly wage' shall mean the average wage paid during and over the month in which such employee is killed or injured." (Emphasis supplied). Chapt. 28, § 6, Ariz.Laws of 1939.

If we assume, as has been discussed above, that the reason for the deletion of the word "average" in the 1933 amendment was for the purpose of demonstrating a legislative intent to restrict consideration to the prior thirty days' wages when the workman had been continuously employed during the thirty days immediately preceding the injury, then it must be presumed that by reinstating the word "average" in the 1939 amendment, the legislature intended that in *all* instances, the Commission could consider factors other than the wages received during the immediately preceding thirty days, even though the employment was continuous during that period.[3] In any event there have been several decisions subsequent to Brisendine v. Skousen Brothers, 48 Ariz. 416, 62 P.2d 326 (1936) and the 1939 legislative amendment which expressly hold that even where the injured workman has been continuously employed for the thirty days immediately preceding the injury, other factors may be

---

3. Brisendine, *supra*, Footnote 1, decided in 1937, had held that where a truck driver was "continuously employed" by the same employer for more than one month prior to injury in work of an intermittent nature, his average monthly wage must be determined solely by his actual earnings during that month, and not by what he might have earned from that employer if his work had not been intermittent

in character. It is possible that the 1939 legislative amendment was in response to Brisendine, and was intended to change the law so that other factors, including previous wages, could be considered where the employment was intermittent even though the injured workman had been "continuously employed" by the same employer for the immediately preceding thirty days.

considered in establishing his average monthly wage if for some reason such earnings for the immediately preceding thirty day period do not adequately reflect his demonstrated earning capacity in that employment. Pettis v. Industrial Commission, 91 Ariz. 298, 372 P.2d 72 (1962); Kurtz v. Matich, 96 Ariz. 41, 391 P.2d 594 (1964); Kennecott Copper Corp. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839 (1944). Unfortunately, when the legislature passed the 1939 amendment, while it changed the basis for compensation from "monthly wage" to "average monthly wage", it neglected to also change (or delete) the then existing statutory definition of "monthly wage". As has been previously shown, this statutory definition was a holdover from the original statutory scheme which strictly limited the wage base consideration to the wages received during the thirty days immediately preceding the injury, a scheme which was modified to a large extent by the 1933 amendment and further eroded by the 1939 amendment. The retention of this original definition of "monthly wage" has been a continuing source of confusion to the reader not familiar with the legislative history of the statute, since on its face it logically appears to limit consideration to wages received "during and over the month in which the employee is killed or injured", an interpretation directly in conflict with other language of the statute and certainly in conflict with many Arizona Supreme Court decisions interpreting the statute.[4] The post-1939 decisions which have considered the dilemma created by the retention of this definition have generally, without consideration of the statutory history, searched for a meaning which would not do violence to the remainder of the statute. Thus, in Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217 (1949) the court, referring to this definition sentence, stated:

"This sentence . . . can only apply where the employee has worked for a period of less than thirty days." 69 Ariz. 159, 167, 211 P.2d 217, 222 (1949). *See also* Pettis v. Industrial Commission, *supra.* While this interpretation accomplishes the salutary purpose of not interfering with the enforcement of the overall statute in accordance with the probable intent of the legislature, it does ignore the obvious original intent of the legislature that it apply in *all* situations, regardless of the length or continuity of employment prior to the injury. No doubt in recognition of the post-1939 decisions and the obvious incongruity between the decisions and the statute as then written, the codifier of the 1956 code rearranged the statute so as to remove the definition sentence from its original nexus with the first sentence of the statute, and reinserted it in the latter part of the statute subsequent to the provision dealing with the determination of the wage base of employees who have not been continuously employed for the period of thirty days prior to the injury.

From the foregoing analysis of the statutes and decisions we think that it is clear that in establishing the claimant's average monthly wage, the hearing officer and the Commission may, under appropriate circumstances, consider factors other than the injured employee's earnings during the immediately preceding month, even though he has been continuously employed during that month. As stated in Kurtz v. Matich:

"Normally, consistent with Kennecott Copper Corp. v. Industrial Commission, *supra,* the thirty days previous to the injury should be the basic wage for com-

4. In De Galviz v. Industrial Commission, 61 Ariz. 377, 379, 149 P.2d 837, 838 (1944), Justice Ross accurately described the confusion resulting from the amendments to this statute when he stated that

"no one, not even a King Solomon, can know from its language what is meant, unless he is advised or informed as to what was evidently intended."

**504**

puting compensation but if the employment is intermittent for reasons over which the employee has control or the loss of time is a common and ordinary incident to the particular employment, the Commission may properly average a longer period to determine a wage base." 96 Ariz. 41, 44, 391 P.2d 594, 596 (1964).

*See also,* Waller v. Industrial Commission, 99 Ariz. 15, 406 P.2d 197 (1965). There are other opinions of the Arizona Supreme Court which go so far as to say that when a claimant has worked for more than thirty days prior to the injury, the average monthly wage *may not be ascertained* from wages earned in a single month. *See* Powell v. Industrial Commission, 104 Ariz. 257, 451 P.2d 37 (1969); Pettis v. Industrial Commission, *supra.* However, when these decisions are analyzed we do not think that there is any real conflict with Kurtz, *supra.* We think the meaning intended is that in such instances the last month's wages may not be blindly accepted by the Commission if there is evidence presented which shows that such earnings do not adequately represent the claimant's true average monthly wage "at the time of injury", or as stated in subsection B of A.R. S. § 23–1041, his "monthly earning capacity . . . at the time of the accident." While the original statutory provisions relating to the determination of the claimant's average monthly wage were quite restrictive and highly inflexible, successive liberalizing amendments and decisions interpreting the same have resulted in a highly flexible standard which gives the Commission wide discretion in order that it might accomplish the obvious statutory goal—the determination of a realistic pre-injury wage base which can serve as a standard for comparison with the post-injury earning capacity of the injured workman. *See* 2 A. Larson, Workmen's Compensation Law § 60.11 at 88.181 (1971).

The facts in the case now under consideration by this Court show that the claimant was continuously employed on a full-time basis by petitioner Hartshorn for the thirty days prior to his injury. With the foregoing principles in mind we have no hesitancy in stating that the hearing officer and the Commission did not err in allowing evidence as to the claimant's actual earnings from his full-time employer for a period prior to his accident, extending from October 3, 1968 through the date of the injury, June 23, 1969.[5] This included evidence concerning an hourly wage increase which became effective June 1, 1969, some 23 days prior to the claimant's injury. One of the principal issues presented on this appeal concerns the weight which the hearing officer allocated to this raise in computing the claimant's average monthly wage. In considering the effect which this raise should have on the establishment of claimant's average monthly wage, the hearing officer converted the dollar amount of the raise into a percentage factor, and then increased the claimant's prior wages accordingly. The adjusted amount thus obtained was then divided by the number of days involved in the period under consideration (some 264 days) to arrive at a daily rate which was then converted back into a monthly rate. In our opinion the hearing officer erred in making this retrospective adjustment so as to take into consideration wages which the claimant might have received if the raise had been effective at an earlier date. The Arizona Supreme Court stated in Brisendine v. Skousen Brothers that:

> "The theory of the present compensation act . . . is to compensate the injured workman on the basis of what he *actually was earning,* and not upon what *he might have earned. . . .* " (Emphasis in original). 48 Ariz. 416, 423, 62 P.2d 326, 329 (1936).

---

5. The propriety of allowing evidence relating to wages earned during this same period from part-time weekend and evening employment with other employers will be subsequently considered in this opinion.

Notwithstanding this broad language in Brisendine, this Court recognizes that there might exist circumstances which would require the Commission to base a claimant's average monthly wage upon what he *might have earned* rather than upon his actual earnings. A good example of such circumstances are those described in subsection B of A.R.S. § 23–1041 where the employee has not been continuously employed for the period of thirty days immediately preceding his injury. Another example is found in situations where, even though the claimant has been continuously employed for the preceding thirty days, his employment has been intermittent or affected by seasonal factors. See Kurtz, *supra;* Pettis, *supra.* In these cases the consideration of what the claimant "might have earned" is accomplished indirectly by omitting from consideration the intermediate period or periods of unemployment. Conversely, there might be circumstances where the wages paid to the claimant by his employer for the thirty day period immediately preceding the injury may be so inflated that they do not present a true picture of the average monthly wage of the claimant at the time of the injury and thus must be reduced. See Kennecott Copper Corp. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839 (1944). However, where there has been continuous full-time employment, not intermittent in character nor affected by seasonal factors, we do not believe that the Commission may select a certain period of time as affording a reasonable basis for determining a claimant's average monthly wage, and then retrospectively increase the wages actually received during that period so as to reflect a wage increase received during the latter part of that period. We are not saying that the Commission may not properly give great weight to such a raise in determining a

claimant's average monthly wage. Such a contention would be contrary to the statutory mandate that it is the average monthly wage "at the time of injury" which is important. Under the facts of this case, in view of the raise received by the claimant 23 days before his injury, the period affording the most reasonable basis for determining claimant's average monthly wage "at the time of his injury" might well have been the period of thirty days immediately preceding his injury. Where there has been full continuous employment for the thirty days immediately preceding the injury, it is our opinion that the statute contemplates, as stated in Kurtz, *supra,* that the wages received during that thirty day period should constitute the basic wage for the determination of the average monthly wage. However, if the evidence shows that for some reason said wages do not realistically reflect the claimant's demonstrated earning capacity, then the Commission should consider wages received over such a reasonable period in excess of thirty days as would allow the consideration of pertinent factors.[6] Unlike Kennecott Copper Corp., *supra,* there was nothing in the facts before the Commission in this case which would indicate that the increase in compensation received by the claimant prior to his injury was of an unusual or temporary nature so as not to reflect the claimant's true, normal wage earning capacity at the time of injury. Rather, the natural inference from the evidence presented was that the raise was of an industry-wide, continuing nature.

The other issue raised on this review concerns the propriety of the consideration by the hearing officer of wages received by the claimant from sporadic part-time, weekend and evening employment which was contemporaneous with claimant's above-described full-time employment. A

---

6. Under A.R.S. § 23–1041 the *minimum* period which can be considered in determining the average monthly wage of a continuously employed employee is thirty days. It might well be that in considering the part-time earnings from other employments hereafter discussed, a different period of time would be relevant than that which would be relevant in considering the earnings from the full-time employment.

review of A.R.S. § 23–1041 does not reveal any statutory language which would directly limit the average monthly wage of a continuously employed claimant to the wages paid to him by the employer by whom he was employed at the time of his injury. Wells v. Industrial Commission, 63 Ariz. 264, 161 P.2d 113 (1945). It is true that subsection B of § 23–1041, which involves the computation of the average monthly wage for employees who have not been continuously employed for thirty days prior to the injury, does mandate that consideration be given to the several statutorily listed factors so as to arrive at an average monthly wage which reasonably represents such employee's monthly earning capacity "in the *employment* in which he is working at the time of the accident." (Emphasis supplied). Some prior Arizona decisions have assumed, without discussion, that the quoted limiting language should likewise apply to situations involving claimants who have been continuously employed for the thirty days immediately preceding the injury, and that "employment" means "employer", and have thus held that in such instances the Commission could consider only the wages received from the employer for whom the claimant was working at the time of the injury. *See* Mickelson v. Industrial Commission, 7 Ariz.App. 182, 437 P.2d 666 (1968); [7] dicta in Steward v. Industrial Commission, *supra.*

In our opinion it is clear from the statutory context that the word "employment" as used in subsection B of § 23–1041 was intended to refer to the particular occupation or trade in which the claimant was engaged at the time of injury rather than to a particular employer. In accord, *see* Wesolowski v. Industrial Commission, 99 Ariz. 4, 405 P.2d 887 (1965). Any other interpretation would render subsection B unintelligible, since the subsection refers to wages received by other employees "working in the same or most similar *employment* in the same or neighboring locality." (Emphasis supplied). In our opinion the statutory language clearly does not limit consideration to wages received from one employer. We recognize that it could be argued that the only time wages from different employers could be considered is when the wages result from services rendered in the same occupation or trade. We doubt that the language used in the statute was intended to have any application to the question under consideration. Rather, its only purpose was to specify the applicable wage standard in determining the average monthly wage of a non-continuously employed injured workman. But even if the statutory language "in the employment in which he is working at the time of the accident" is construed to apply to the full-time—part-time dichotomy, applying that statutory construction to the fact situation at hand, it would appear that the Commission did not violate such construction in considering claimant's earnings from his part-time employments, since such earnings were admittedly from an employment identical to that in which the claimant was engaged at the time of his injury. However, before we can conclude that the Commission did not err in considering such part-time earnings, we must consider decisionally imposed limitations, as well as the above-discussed statutory provisions.

Before proceeding with decisionally imposed limitations, it should be noted that at least two Arizona decisions have held that contemporaneous full-time and part-time wages could not be aggregated

---

7. The fact situation in Mickelson was considerably different from that here involved. In Mickelson, it appears that contemporaneously performed employment was not involved. Rather the employments were sequential in nature. The holding in Mickelson was that the Commission correctly refused to consider a legislator's employment as a building inspector prior to the legislative session. Mickelson is further distinguishable upon the basis that the claimant's employment as a building inspector was not in the same trade or employment as his legislative services.

when received from dissimilar trades or employments. Wesolowski, *supra*; Sanchez v. Industrial Commission, 96 Ariz. 19, 391 P.2d 579 (1964). In Sanchez, the Court expressly overruled any inference which might otherwise have been gleaned from the early decision of the court in Wells v. Industrial Commission, *supra,* that wages from *different* occupations might be aggregated in computing the average monthly wage.

A further limitation which appears to be totally decisional in basis without any express statutory foundation is found in decisions relating to difficulties which might be encountered in the establishment of insurance premiums for compensation coverage and thus appear to be mainly concerned with insurance actuarial problems rather than being concerned with the intent of the workmen's compensation act insofar as concerns the establishment of the average monthly wage base. These decisions are typified by the decision rendered in Faulkner v. Industrial Commission, 71 Ariz. 76, 223 P.2d 905 (1950). In Faulkner the claimant was injured in his part-time industrially insured employment at an auto race track. The court held that in determining the claimant's average monthly wage base, the Commission could not consider wages received from his full-time uninsured employment with the Veterans Administration. The court did not cite nor discuss the language of the average monthly wage statute, but rather relied upon the rationale that the workmen's compensation act is based upon principles of insurance, and that to allow the inclusion of wages upon which no premium had been paid might result in bankruptcy of the fund.[8] Assuming the validity of such a limitation, it is not applicable to the facts of the case at hand, since the only evidence presented indicates that all of the claimant's employers carried industrial insurance.

██ Another decisional limitation is suggested by way of dictum by the Arizona Supreme Court in Wells v. Industrial Commission, *supra*. In Wells the injured employee was a full-time salesman and a part-time painter. Both employers· were insured, and the injury was received while working in the part-time employment. While the court allowed the average monthly wage to be computed based upon the aggregate of both the part-time and full-time wages, it warned that an employee injured in part-time employment should not be allowed to recover compensation based upon an average monthly wage which would be greater than what his wages would have been if employed full-time in that part-time employment.[9] If such dictum represents a true statement of the law, it would appear to be applicable here, since the consideration of the claimant's part-time wages did have the effect of setting an average monthly wage base which exceeded claimant's wages for his· full-time employment. However, in view of later decisions we do not think that the dictum in' Wells can be considered as controlling. In fact situations involving routine overtime the court has not considered the full-time wages as imposing a limit, but rather has allowed the injured workman's compensation to be based upon an average monthly wage in excess of the normal full-time wage. Field v. Industrial Commission, 73 Ariz. 133, 238 P.2d 953 (1951). We see no reason for such a limitation when the "overtime" services are performed for a different employer in the same trade or employment. Such a result is squarely in accord with the Supreme Court's reasoning in the Sanchez and Wesolowski decisions, *supra*. We are not persuaded by petitioner's reliance

---

8. The reliance in Faulkner upon this insurance principle ignores completely the provisions of A.R.S. § 23–1041, subsec. B, which provisions clearly contemplate compensation of an injured claimant upon the basis of an average monthly wage upon which no premiums have been paid.

9. As previously indicated in this opinion, the holding in Wells which allowed the aggregation of wages from unrelated employments was expressly overruled in Sanchez, *supra*.

**508**

upon Mickelson, *supra,* and its progeny, Riggins v. Industrial Commission, 9 Ariz. App. 469, 453 P.2d 980 (1969). *See also* dicta in Turley v. Industrial Commission, 10 Ariz.App. 21, 455 P.2d 470 (1969); Franklin v. Industrial Commission, 9 Ariz. App. 64, 449 P.2d 300 (1969).

In conclusion, it is our opinion that where a claimant is injured in his full-time employment the Commission may properly consider part-time wages contemporaneously received for services performed in the same or similar types of employment from other insured employers. However, for other reasons previously set forth herein, the award must be set aside.

EUBANK and JACOBSON, JJ., concur.