NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

GARY STOREY, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

MESA UNIFIED SCHOOL DISTRICT, *Respondent Employer*,

YORK RISK SERVICES GROUP, *Respondent Carrier*.

No. 1 CA-IC 16-0028
FILED 2-23-2017

---

Special Action - Industrial Commission

ICA Claim No.  20141-120263
Carrier Claim No. 4727392
Janet Weinstein, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Day Law Office, Mesa
By Linda C. Day, John F. Day, II
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, PLLC, Phoenix
By K. Casey Kurth
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1        This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review setting an average monthly wage.  Four issues are presented on appeal:

(1) whether the administrative law judge (ALJ) erred by failing to apply the presumptive thirty-day wage base when calculating the petitioner employee's (claimant's) average monthly wage;

(2) whether the ALJ legally erred by using the wages "paid" to claimant instead of the wages "earned" by claimant to calculate the average monthly wage;

(3) whether the ALJ erroneously used an expanded wage base to calculate the claimant's average monthly wage; and

(4) whether the ALJ erred by failing to include overtime in the average monthly wage calculation.

Because we find that the average monthly wage calculation is reasonably supported by the evidence and in accordance with the applicable law, we affirm the award.

**JURISDICTION AND STANDARD OF REVIEW**

¶2        This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(2) (2016), 23-951(A) (2012), and Arizona

Rule of Procedure for Special Actions 10.[1]  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law *de novo*.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We consider the evidence in a light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002) (citation omitted).

## FACTUAL AND PROCEDURAL HISTORY

**¶3**        In October 2011, the claimant retired from the City of Mesa and began receiving benefits from the Arizona State Retirement System (ASRS).  In January 2014, he completed and signed an online application to become a school bus driver for the respondent employer, Mesa Unified School District (Mesa).  The application provided:

> Please note: Retirees who are receiving a monthly benefit from the Arizona State Retirement System will be paid a reduced salary or hourly rate according to district policy.  Rehired retirees are not eligible for health insurance benefits with Mesa Public Schools, regardless of full time status.

Mesa hired the claimant, and he began training on January 27, 2014 to be employed as a bus driver.  During his training period, he was paid $10.65 per hour, 20 hours per week.  However, on April 10, 2014, the claimant failed to qualify for the bus driver position and he was given the opportunity to become a Families in Transition (FIT) van driver.

**¶4**        On April 11, 2014, the claimant completed the paperwork to become a FIT driver.  As a FIT driver, the claimant was to be paid $9.63 per hour, with a guaranteed 20 hours per week.  Upon performing his physical test to become a driver, the claimant injured his right shoulder. He filed a workers' compensation claim, which was eventually found compensable.[2]

---

[1]        Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[2]        The respondent carrier, York Risk Services Group (York) denied the claim for benefits, and the claimant protested.  The claim was litigated at the ICA, and an ALJ found it compensable.

The ICA then entered its Notice of Average Monthly Wage on September 15, 2015,[3] and the claimant timely protested.

**¶5**       The ICA held one hearing for testimony from the claimant and Mesa's Director of Classified Personnel, Christine Chapman. The parties filed post-hearing legal memoranda, and the ALJ entered an award setting the average monthly wage:

> In this case, applicant did not qualify for the bus driver position upon completion of the bus driver training. He applied for, was offered and accepted the FIT van driver position on April 11, 2014 and as of the date of injury, intended to continue his employment with the defendant employer in that position for a guaranteed 20 hours per week at the rate of $9.63 per hour. I find that applicant's AMW is calculated as follows: $9.63 (the hourly rate he accepted effective April 11, 2014 as a FIT van driver) X 20 hours per week (as the minimum hours agreed by the defendant employer) X 4.333 = $834.54 as applicant's AMW for his April 11, 2014 industrial injury.

The claimant requested administrative review, but the ALJ summarily affirmed the award. The claimant next brought this appeal.

## DISCUSSION

**¶6**       When setting the average monthly wage, the goal is to establish a realistic pre-injury wage base for comparison with the injured claimant's post-injury earning capacity. *Floyd Hartshorn Plastering Co. v. Indus. Comm'n*, 16 Ariz. App. 498, 504, 494 P.2d 398, 404 (1972). This is accomplished by arriving at "as fair an estimate as possible of claimant's future earning capacity." 8 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 93, at 93-1 (2016).

---

[3]     The ICA determines and issues the notice of average monthly wage. *See* A.R.S. § 23-1061(F) (2016). Before issuing the notice of average monthly wage, the ICA receives a recommended average monthly wage calculation from the insurance carrier. The ICA then independently determines the average monthly wage and issues the notice. *See, e.g., Borquez v. Indus. Comm'n*, 171 Ariz. 396, 398, 831 P.2d 395, 397 (App. 1991); *see* A.R.S. § 23-1041 (2016).

**¶7** Wages earned during the thirty days preceding an industrial injury are the presumptive average monthly wage, but the ICA "may look beyond the amount actually paid to the claimant in a given month if that amount does not accurately reflect the claimant's earning capacity," i.e., unrepresentative wages during the month before the injury. *See* A.R.S. § 23-1041(G) (2016); *Carr v. Indus. Comm'n.* 197 Ariz. 164, 167, ¶ 14, 3 P.3d 1084, 1087 (App. 1999).

**¶8** When the presumptive base does not realistically reflect the claimant's earnings, the ALJ has broad discretion to use an expanded wage base. *See* A.R.S. § 23-1041(G); *Davis v. Indus. Comm'n*, 134 Ariz. 293, 296, 655 P.2d 1345, 1348 (App. 1982). Justifications for using an expanded wage base to determine the average monthly wage have included: … *inflated wages during the month before the injury*. *Elco Veterinary Supply v. Indus. Comm'n*, 137 Ariz. 46, 48, 668 P.2d 889, 891 (App. 1983) (emphasis added).

**¶9** The claimant first argues that the ALJ erred by failing to apply the presumptive wage base because no evidence in the record supports a finding that it did not provide an accurate measure of his earning capacity. We disagree. In this case, during the thirty days before his injury, the claimant earned wages as a school bus driver trainee. Because he did not pass the driving test to become a bus driver, he accepted a lower-paying position as a van driver. For those reasons, the position of van driver more accurately reflected the claimant's "future earning capacity." We find no error in the ALJ's rejection of the presumptive thirty-day pre-injury wage base.

**¶10** The claimant next argues that the ALJ erred by relying on the wages paid to the claimant rather than the wages he earned. The basis for this argument is that as an ASRS benefit recipient, the claimant was subject to a 17% reduction in wages per district policy. Ms. Chapman explained that the reduction was required so that the claimant did not earn more than other similarly-situated employees who were not ASRS retirees.

> Q. [By Mr. Kurth] So then let me ask you about people who are receiving Arizona State Retirement benefits. People who apply to the district or who are working for the district that are receiving Arizona State Retirement benefits, do they receive the same hourly rate as people working for the district who are not Arizona State Retirement recipients?
>
> A. [Ms. Chapman] They do not.

Q. Why not?

A. We've had that practice for many, many years, and it's our attempt to somewhat equalize when you take - - Arizona State Retirement System requires you to pay contributions when you work at least 20 hours a week, and so when we take two 20-hour a week employees, one being a non-retiree that has to pay in contributions out of every check and the other being an active retiree through the system, they do not have to pay any contributions any further, so that is our attempt to somewhat equalize the net pay.

Based on Ms. Chapman's testimony, we find that the claimant earned and was paid wages similar to other employees within his job classification.

¶11       The claimant next argues that the ALJ applied an erroneous expanded wage base by utilizing future earnings rather than previous earnings. We disagree and find guidance in *Swift Transp. v. Indus. Comm'n*, 189 Ariz. 10, 10 938 P.2d 59, 59 (App. 1996). In *Swift*, this court considered the average monthly wage of a truck driver. *Id.* After he was hired, the driver was placed in a probationary training period and was paid $250.00 per week. *Id.* On March 2, 1992, he became a regular driver and was then paid twenty cents per mile. *Id.* From March 2 through March 9, 1992, he earned $645.96. *Id.*

¶12       On March 9, the driver sustained an industrial injury. *Id.* In setting his average monthly wage, the ALJ utilized the driver's regular wages instead of his probationary wages earned during the thirty days before injury. *Id.* at 11, 938 P.2d at 60. The employer appealed, but this court affirmed the ALJ's award. *Id.* at 12, 938 P.2d at 61. We held "the ALJ properly determined that the claimant's average monthly wage should reflect what he was actually earning at the time of injury and that his training wage was properly excluded because it presents a distorted basis upon which to make a determination of future earning capacity." In this case, the claimant was earning wages as a FIT driver at the time of his industrial injury. *Id.* at 12-13, 938 P.2d at 61-62. We hold that these earnings more accurately reflected his future earning capacity.

¶13       The claimant lastly argues that the ALJ erred by failing to include overtime hours in his wage base. In that regard, the ALJ found:

5. … During his employment with the District applicant was paid every two weeks and for each pay period received a pay

6

stub for the direct deposit payment that reflected his hourly rate and the hours he worked. Applicant did not contest the correctness of the information set forth on his pay stubs. Applicant's payroll stubs show that while he was a bus driver in training, applicant did not, on average, work in excess of 20 hours per week on a regular basis.

The pay stubs were placed in evidence:

| DATES | HOURS |
|---|---|
| 1/17/14 - 1/30/14 | 12.74 |
| 1/31/14 - 2/13/14 | [not in record] |
| 2/14/14 – 2/27/14 | 13.77 |
| 2/28/14 – 3/13/14 | 66.78 |
| 3/14/14 - 3/27/14 | 22.48 |
| 3/28/14 – 4/10/14 | 42.06 |

Averaging the available information for a ten-week period before the industrial injury, the claimant worked an average of just under sixteen hours per week. We find that this evidence supports the ALJ's finding regarding overtime.

## CONCLUSION

¶14        For all of the foregoing reasons, we affirm the ALJ's award.

