391 P.2d 579

Frank SANCHEZ, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Shattuck Denn Mining Corporation, Iron King Branch, Respondents.

No. 7694.

Supreme Court of Arizona.

In Division.

April 16, 1964.

Palmer C. Byrne, Prescott, for petitioner.

Lorin G. Shelley, Phoenix, for respondent, Industrial Commission of Arizona. Donald J. Morgan, C. E. Singer, Jr., Ben P. Marshall, and Laurence Davis, Phoenix, of counsel.

Twitty, Sievwright & Mills, Phoenix, for respondent, Shattuck Denn Mining Corp.

STRUCKMEYER, Justice.

This cause arises out of a petition for writ of certiorari by Frank Sanchez to review an award of the Industrial Commission of Arizona. Petitioner sustained an injury to his back on August 6, 1956, while working for Shattuck Denn Mining Corporation as a miner. Petitioner was also a part-time musician, working once a week as a trumpet player. After conservative treatment was unsuccessful, a laminectomy and spinal fusion of petitioner's fifth lumbar and first sacral vertebrae was performed on January 21, 1957. A program of intensive rehabilitation exercises was instituted at Samuel Gompers Memorial

Clinic which was terminated because of failure of petitioner to receive any material benefits. Further surgical exploration was performed on November 21, 1958. No abnormalities other than a sound fusion at the site of the previous surgery was found. Some scar tissue was removed.

Because petitioner appeared to be making no progress toward rehabilitation, he was examined by Dr. William B. McGrath, psychiatrist, on March 10, 1959, who made no recommendation for psychotherapy being of the opinion that psychotherapy, like physical therapy, "will not benefit" petitioner "unless he wants them to." Finally, on November 10, 1959, as a predicate to a final award, a hearing was held for the purpose of inquiring into petitioner's present earning capacity.

The medical testimony in general indicated that petitioner had not fully recovered from his injury because he had not put forth the effort necessary to attain a recovery. Petitioner testified that he had from time to time applied for any kind of easy part-time job because he couldn't work a whole day; that while prior to the accident he had worked as a professional musician, he had not since because blowing the trumpet bothered his back.

Subsequent to the hearing, his former employer, the Shattuck Denn Mining Corporation, offered to provide light work in connection with cleaning two small wash-rooms called "change rooms". Petitioner thereafter worked half days only on March 10, 12, 18, 21 and 23 of 1960 and then voluntarily quit the job. At a second hearing held on May 20, 1960, petitioner testified that this work was too difficult but that he applied at the State Employment Service and told them he would like something he was capable of doing considering his injury and the kind of job he would like to get. He also testified that although no doctors had advised him to do so, he was using a cane because his leg was so weak that it gave out on him and that he had tried to play the trumpet but it was too much a strain on his back.

Testimony developed that petitioner had been put under observation by an investigator for the Commission. The investigator's testimony was to the effect that in his own home petitioner did not use a cane but only when he appeared outside his house or in public; that he played a trumpet in an establishment known as "Bruno's" bar on Saturday nights, being so observed on March 19, 26, and April 2 and May 14, 1960, from the hours of 9:00 p. m. until the bar closed at 1:00 a. m.

Petitioner, when recalled for further examination, admitted playing the trumpet on those occasions but testified at first that he positively received no money for playing the trumpet and later that he received 30, 40 and 50 cents as his share of the kitty but that neither the proprietor of the

**22**

tavern nor the leader of the band paid him any wages. Finally, in answer to the question:

"Q And is it your testimony that you have never been paid for this playing?"

he replied,

"A Well, I won't say I got paid for that. As I said, sometimes they give me maybe two or three dollars, * * * or they probably refund the money that I spend on drinks."

The investigator subsequently checked with the Arizona Unemployment Security Commission whose records revealed that petitioner was actually paid $1403.00 between March, 1956, and February, 1959, by the owners of "Bruno's" bar. Further, investigation revealed payments to petitioner of $10.00 a night for the Saturday nights of March and April, 1960. Petitioner testified he did not play every number, that he got off the bandstand "for maybe a half hour" and "then I probably go back again, play a few numbers and rest a few numbers." The investigator testified that petitioner played as steadily and regularly as the other musicians and that he observed no rest periods at all other than possibly two or three minutes out of every hour.

On October 26, 1960, the Commission entered its decision, findings and an award for unscheduled permanent partial disability. It found that petitioner sustained personal injury by accident arising out of and in the course of his employment as a miner at which occupation he earned $413.-35 a month, that he suffered a fifteen per cent physical functional disability as the result of his injury, that he claimed more disability than he actually possessed, that he was physically able and mentally competent to perform the regular duties of a change-room attendant and earn $378.56 a month, that such employment was available, that petitioner's earning capacity had been reduced by 8.42% for which he was entitled to compensation in the sum of $19.13 monthly; that petitioner *willfully* failed to report earnings in the amount of $1859.66 (as a musician) and that consequently he had been overpaid the sum of $72.95 which sum was to be deducted from future payments.

On petitioner's protest, a rehearing was held on October 16, 1961, and on July 6, 1962, the Commission affirmed its previous decision, findings and award. From the July 6, 1962, award this appeal by certiorari has been taken.

As a preliminary, petitioner argues that he did not willfully fail to report earnings in the amount of $1859.66. But we think the bare recitation of the foregoing facts refutes petitioner's argument and fully justifies the finding—in fact, brings into question the credibility of much of petitioner's unsupported testimony.

Petitioner urges that if the Commission may take into consideration petitioner's earnings as a part time musician to determine petitioner's monthly earning capacity after his injury it should have taken into consideration earnings as a musician prior to his injury and for that reason the award of the Commission pertaining to the overpayment of the sum of $72.95 was unwarranted. We are in agreement with petitioner's position. This State is committed to the principle that the wage basis of an employee injured in one of two unrelated employments in which he was concurrently employed will not be combined where the concurrent employer was not subject to the compensation act. Faulkner v. Industrial Commission, 71 Ariz. 76, 223 P.2d 905. In Faulkner, the claimant was injured while serving as a flagman at an automobile race in which occupation he was covered under the Workmen's Compensation Act. Claimant also had a full-time job with the Veterans Administration, an employer not covered by the act. Our decision was that claimant's monthly salary from the Veterans Administration could not be combined with that of an automobile racetrack flagman in computing the basis for paying compensation benefits.

Faulkner is consistent with the usual rule, sometimes adopted into statute, that where employments are dissimilar the earnings will not be combined. See Johnson v. Phaefflin, 136 Conn. 107, 68 A.2d 687; Central Welding and Iron Works v. Renton, Fla., 145 So.2d 876; Bowles v. James Lumber Company, 345 Mich. 292, 75 N.W.2d 822; Weiss v. Railway Express Agency, 283 App.Div. 288, 127 N.Y.S.2d 296; Brandfon v. Beacon Theatre Corporation, 300 N.Y. 111, 89 N.E.2d 617; Knight v. Cohen, 56 N.J.Super. 516, 153 A.2d 334. Any inference to the contrary arising out of Wells v. Industrial Commission, 63 Ariz. 264, 161 P.2d 113, is specifically overruled.

The Commission could not, as a basis for compensation, have combined the earnings prior to the injury of the dissimilar employments of miner and musician. But it has, after the injury, offset earnings as a musician against loss of earnings as a miner. We think, in the light of the announced principle, it would be inequitable for the Commission to do so.

"Obviously, if claimant's average wage before the accident is determined on the basis only of earnings from the employment in which he suffered the injury, reason and fairness demand that the 'earnings' after the accident should likewise be limited to wages from that same employment—or, if forced into another occupation because of his injury, wages realized from that substitute employment." Brandfon v. Beacon Theatre Corp., supra, 300 N.Y. 114, 89 N.E.2d 618.

If the Commission may not combine wages in dissimilar employments to determine a wage basis by which a claimant's compensation is augmented, it should not combine wages from dissimilar employments to decrease a claimant's wage basis after his injury.

■ Petitioner urges that where psychoneurosis is caused or aggravated by an industrial accident the Commission may not find that a claimant is physically able and mentally competent to engage in continuous and regular employment of some nature. The established rule in this State is that if an injury causes a disabling mental disease a claimant is entitled to the same benefits as those physically injured by accident arising out of and in the scope of their employment. Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573; Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627.

■■ We do not think, however, that petitioner's position rests upon a firm foundation. Petitioner is faced with certain well accepted rules of law in establishing his claim to compensation. In general, it is petitioner's burden to show that the injury produced the claimed disability. Wheeler v. Industrial Commission, 94 Ariz. 199, 382 P.2d 675. Specifically, he has the burden to prove his inability to do the light work available to him of a change-room attendant. Bierman v. Magma Copper Company, 88 Ariz. 21, 352 P.2d 356. There is evidence in the record from orthopedic specialist Dr. Alvin L. Swenson that petitioner could perform light work.

Petitioner's personal physician, Dr. Harry T. Southworth, summarized petitioner's attitude in this language:

"* * * I think everybody has had the feeling that Mr. Sanchez has not put forth his best effort in trying to recuperate."

Moreover, the medical advisory board on May 4, 1959, made no recommendations for further treatment, it being the opinion of five doctors that petitioner's case should be terminated as stationary with a fifteen per cent general physical disability.

The evidence as to a psychoneurosis or hysteria derived from the accident is inconclusive. While Dr. William B. McGrath testified at a hearing that there was a neurosis involved in petitioner's attitude, he advised the Commission by letter immediately after an examination of petitioner:

"* * * The patient expresses only the most passive interest in rehabilitation or recovery. In his present emotional condition, I suspect that he could 'outwait' any therapist who might try to get him back to work. He does not have such distress as would bring him cooperatively to psychiatric care.

Psychotherapies, like physical therapies, will surely not benefit him unless he wants them to. *I cannot tell in one examination whether his passive acceptance of an invalid role is consciously or unconsciously determined.* (Emphasis supplied.)

Furthermore, Dr. McGrath testified (to which there is no contradictory evidence) that there was no possibility whatsoever that the type of neurosis petitioner had could develop from his injury.

█ Petitioner's case finds support only in the testimony of himself and his wife. As to this, the Commission was of the ultimate opinion that petitioner "claims more disability than he actually possesses." Petitioner's testimony was repeatedly discredited, as for example, petitioner's asserted physical disability necessitating the use of a cane and his claimed inability to play the trumpet. Where there is a conflict in the testimony which is in part dependent upon a claimant's credibility, the Industrial Commission, as a trier of fact, is at liberty to choose what it believes. Scherer v. Industrial Commission, 87 Ariz. 224, 349 P.2d 786. The Commission was entitled to believe that petitioner's burden to affirmatively show by a reasonable preponderance of the evidence that he is entitled to compensation had not been met. See Mead v. American Smelting & Refining Company, 90 Ariz. 32, 363 P.2d 930; Bierman v. Magma Copper Company, supra; Cain v. Industrial Commission, 87 Ariz. 40, 347 P.2d 699; Sheridan v. Industrial Commission, 84 Ariz. 264, 327 P.2d 90.

For the reason that the award finding an overpayment in the sum of $72.95 was erroneous the award is set aside.

UDALL, C. J., and LOCKWOOD, V. C. J., concur.