453 P.2d 980

**J. R. RIGGINS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**American Linen Supply Company of Nevada, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 230.**

Court of Appeals of Arizona.

April 30, 1969.

Gorey & Ely, by Stephen S. Gorey, and Joseph M. Bettini, Phoenix, for petitioner.

Robert D. Steckner, Chief Counsel, by Courtney L. Varner, Phoenix, for respondent Industrial Commission of Arizona.

**470**

Robert K. Park, Chief Counsel, Phoenix, for respondent Carrier State Compensation Fund.

MOLLOY, Judge.

We are here concerned with whether the respondent-Commission properly determined that the petitioner-workman has sustained no permanent disability as the result of an industrial accident and whether it erred in fixing his average monthly wage. A defense of res judicata is presented as to the latter.

On July 15, 1966, the petitioner sustained a back injury while performing the duties of his employment by American Linen Supply Company, the respondent-employer. A claim for benefits was made to the respondent-Commission in normal course, and on October 14, 1966, the Commission issued a "Findings and Award for Continuing Benefits and Establishing Average Monthly Wage" in which it found the petitioner's average monthly wage to be $255.20.

Based upon the report of a group consultation by medical experts and a report of the petitioner's attending physician, Dr. White, the Commission entered on January 12, 1967, its "Findings and Award for Temporary Disability." Finding No. 6 thereof recites:

"That the medical evidence reflects that said applicant has no disability resulting from said accident, and the Commission so finds."

The petitioner timely filed a notice of protest of the award and a petition for hearing and a formal hearing was held on June 9, 1967. The referee found that the petitioner had not sustained any permanent disability as a result of the July 15th industrial injury and that the January 12, 1967, "Findings and Award" was correct and fully supported by the evidence. The referee recommended that the Commission enter a decision affirming the January 12th award, together with a thirty-day clause. On August 7, 1968, the Commission approved the referee's recommendation and issued a "Decision Upon Hearing and Order Affirming Findings and Award for Temporary Disability." This award found that the petitioner had sustained no permanent disability as a result of the July 15th industrial injury and that the January 12, 1967, "Findings and Award for Temporary Disability" was correct and fully supported by the evidence. The petitioner thereupon sought review by these certiorari proceedings.

At the time of the hearing, the petitioner testified with regard to his continuing disability, i. e., that on numerous occasions his legs "went out" from under him, causing him to fall. He also testified that, in addition to his employment with the Linen Supply Company, he had occasionally been employed by the Pepsi-Cola Bottling Company and this occasional employment continued until the time of his injury. His physician, Dr. White, testified that the described complaints could be attributable to some form of neuritis and/or nerve involvement. He indicated that there was a "possibility" that such involvement could be related to the July 15, 1966, injury and recommended that a neurosurgical examination be made.

Subsequent to the hearing, the Commission scheduled an appointment with a neurosurgeon. The first appointment was canceled because of petitioner's failure to appear. A second appointment was scheduled which was kept by the petitioner. The neurosurgeon reported in writing to the Commission that the petitioner had no objective findings of major injury to his back. He expressed agreement with the consultation reports that the physical disability was stationary, and stated that " * * * the problem of malingering and/or a conversion reaction is strongly suspected today, and a neuropsychiatric evaluation would probably be of help." The neurosurgeon further indicated doubt as to satisfactory neuropsychiatric treatment because of lack of cooperation on the part of the petitioner but he felt that evaluation could be obtained " * * * even in the grossest sense."

In accordance with the neurosurgeon's recommendation, the Commission arranged for a neuropsychiatric examination and evaluation. The petitioner failed to keep this appointment.

On December 11, 1967, the referee by written communication, apprised petitioner's counsel of the sequence of events subsequent to the hearing. He indicated that petitioner's failure to appear, with no apparent excuse, seemed to be indictive of malingering. He further indicated that counsel could have until December 19, 1967, to advise him as to a potential solution, if any, or if a further hearing for purposes of cross-examining the neurosurgeon was desired. He indicated that if he heard nothing by December 19th, such inaction would be construed as a waiver of the right of cross-examination and the evidence appearing in the file as of that date would form the basis for the referee's report.

Not hearing from petitioner or his counsel, on June 19, 1968, a referee's report was issued which recommended a finding that the petitioner was suffering from no disability as a result of his injury and that the January 12, 1967, findings and award be reaffirmed. The basis for the recommendation was (1) that the petitioner had failed to carry the requisite burden of proof as to his claim of permanent disability; (2) that the petitioner had failed to demonstrate the average monthly wage established by the Commission was incorrect; and (3) that the Commission's determination of the average monthly wage in its "Findings and Award for Continuing Benefits and Establishing Average Monthly Wage," entered October 14, 1966 was res judicata.

■ The petitioner does not contend that there is sufficient evidence in the record upon which to base a finding of psychiatric disability. He argues that the Commission's failure to explore this possibility prior to closing the case was arbitrary and erroneous. He cites no authority for this argument which, if followed, would place the onus upon the Commission. The petitioner,

who was claiming disability, had the burden of establishing it by a reasonable preponderance of the evidence. Theoharidi v. Industrial Commission, 8 Ariz.App. 364, 446 P.2d 470 (1968); Aquino v. Industrial Commission, 8 Ariz.App. 444, 447 P.2d 259 (1968). This, he failed to do. All the medical evidence in the record establishes that the petitioner's physical condition had become stationary and that there was no permanent disability. Under the above-cited authorities, the Commission's determination as to disability must be affirmed.

The petitioner challeges the Commission's finding as to average monthly wage because it was based solely on the wages received from the employer for whom he was working at the time of his injury. The Commission, on the other hand, contends that the issue of average monthly wage is res judicata inasmuch as the petitioner had not filed a protest or application for hearing within twenty days from the October 14, 1966, "Findings and Award" which established the average monthly wage.

■ We have recently discussed the question of when an action of the Industrial Commission should be given res judicata effect. Talley v. Industrial Commission of Arizona and Fisher Contracting Company, 9 Ariz.App. 308, 451 P.2d 886 (filed 3/13/69); and Pedigo v. Industrial Commission of Arizona and Bilby Produce Company, Inc., 9 Ariz.App. 314, 451 P.2d 892 (filed 3/19/69). In Talley, supra, we stated the "finality" test in relation to the claim of an injured workman arising out of unscheduled injuries, in a file wherein there is no issue as to the fact of a compensable injury:

"* * * Commission action must show a final determination that (1) the injured workman's physical condition has become stationary and (2) that there will be no award for permanent partial disability or that the percentage physical functional disability is established together with a determination as to the loss of earning capacity." 451 P.2d at 889.

Here, the findings and award of October 14, 1966, do not meet this test, and therefore the referee's "res judicata" reasoning must be rejected.

 However, we find no showing in this record that the Commission's computation of average monthly wage was incorrect. The burden of establishing the average monthly wage was upon the petitioner. Morris v. Industrial Commission, 81 Ariz. 68, 299 P.2d 652 (1956). He contends that the Commission failed to consider the fact that he was employed at night by the bottling company, performing similar duties as in the laundry, the employment in which he was working when injured.

In Mickelson v. Industrial Commission, 7 Ariz.App. 182, 437 P.2d 666 (1968), review denied June 4, 1968, we extensively considered and discussed this matter of computation of the average monthly wage. We therein stated:

> "A reading of the foregoing cases reveals that some inconsistencies have developed in this area. In our opinion the formula for the computation of the average monthly wage is one for legislative declaration. In the absence of a situation similar to that presented in Butler, [1] it is our opinion that *the statute permits us to consider only the income of the employee which he received from the particular employer at the time of the injury.*" (Emphasis added) 7 Ariz.App. at 192, 437 P.2d at 676.

*See also* Franklin v. Industrial Commission of Arizona and Rust Sales Company, 9 Ariz.App. 64, 449 P.2d 300 (1969) (dictum).

The award made is in accordance with the legislative declaration, *see* A.R.S. § 23–1041, as amended, as interpreted by these decisions.

Award affirmed.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

---

1. In Butler v. Industrial Commission, 50 Ariz. 516, 73 P.2d 703 (1937), our Supreme Court said:

"* * * we * * * hold that where, as in the present case, a man is engaged in the service of two employers, with duties at two different places, if those duties are with the knowledge and approval of both employers, to be performed in such a manner that they necessarily. require a repeated passage of the employee from one place of business to the other in order that he may properly perform his duties for both, that during such travel back and forth he is in the service of both employers, and if he be injured therein, both are liable to him for compensation in proportion to the remuneration received from each one. Such being the case, both employers should be made parties to any proceeding before the commission." 50 Ariz. at 525, 73 P.2d at 706.