461 P.2d 499

**Robert S. SCOTT, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Columbia Redi Mix Company, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 264.**

Court of Appeals of Arizona, Division 1 Department A.

Nov. 26, 1969.

Strickland, Altaffer, Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, by Dee-Dee Samet, Phoenix, for respondent State Compensation Fund.

DONOFRIO, Presiding Judge.

This is a writ of certiorari to review the lawfulness of the findings and award of The Industrial Commission of Arizona, awarding the petitioner $476.64 as compensation for permanent facial scarring which resulted from injuries sustained in an industrially related accident.

On February 17, 1966, while driving a car within the scope of his employment as a field test salesman for Columbia Redi Mix Company, Inc., the twenty-two-year-old petitioner, Robert Scott, sustained several injuries in a head-on automobile collision. The injuries included a broken nose and facial lacerations which left some permanent scarring. Petitioner applied for and received benefits, including an award of $178.74 for facial disfigurement under A.R.S. § 23–1044, subsec. B, par. 22, whch provides:

"B. Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five per cent of the average monthly wage of the injured employee, in addition to the compensation for temporary total disability, shall be paid for the period given in the following schedule:

"22. For permanent disfigurement about the head or face, which shall include injury to or loss of teeth, the commission may allow such sum for compensation thereof as it deems just, in accordance with the proof submitted, for a period not to exceed eighteen months."

Petitioner made timely protest to the award and petitioned for a hearing. After formal hearing, the Industrial Commission made an award of $476.64 for facial disfigurement. Writ of certiorari followed, bringing before this Court solely the question of the lawfulness of that award.

Petitioner's argument is basically this:

1. Under the Arizona Statutes there is no method defined for establishing the amount of compensation for facial disfigurement. It is left to the discretion of the Industrial Commission and the Commission should look to the underlying theory of the workmen's compensation law in exercising its discretion in setting a just award.

2. The underlying theory of the workmen's compensation law is compensation for loss of earning capacity.

3. In the instant case the Commission should have considered petitioner's age, sex and occupational history, including his parttime work as an actor prior to the injury, and the fact that after injury he turned to acting as a full-time profession. Instead, the referee applied a method of computation which is provided for neither by statute nor regulation and the Commission was acting arbitrarily and capriciously by accepting the referee's recommendation.

The method of computation referred to is set out in the referee's report as follows:

"In the interest of attempting to achieve some degree of uniformity in scarring decisions, this referee adopts the rule previously used by this office in similar cases as follows:

"If the scar is discernible from a distance of five (5) feet, and no further, then the claimant is entitled to fifty-five per cent of his average monthly wage for one-half month; if the scar is discernible from a distance of ten (10) feet, and no more, then the claimant should receive compensation based upon fifty-five per cent of his average monthly wage for a period of one month. Scars that are both discernible and distracting when viewed from beyond five (5) feet or ten (10) feet should be treated as 'maximal' and rated in terms of how many times greater the scar is with respect to discernibility and distraction as compared to the 'minimal' scale indicated above."

The respondent Industrial Commission, on the other hand, defends the position that the statute permits the Commission to exercise its discretion in setting the award with the only limit being a maximum of an eighteen-month period, and that the appellate court must affirm the award unless there is no evidence to support the Commission's findings, in which case the Commission would be acting arbitrarily or capriciously. Among other evidence in support of the Commission's argument that the award is amply supported by the evidence, it quotes the testimony of Dr. Stanley S. Tanz:

"A He has a healed scar over the right side of the distal ends of the nose, which is about an eighth of an inch in width, a half an inch in length, and then a hockey stick shape comes over for another quarter of an inch. This scar is barely visible.

"Q From what distance?

"A I would say from a distance of about two to three feet it becomes practically not noticeable, although you can see it somewhat from the right profile. It's not really disfiguring, in my opinion. But it is noticeable in the right profile at a distance of probably five feet.

"Q Doctor, have you examined the entire head and face? I am asking you with reference to today.

"A Yes.

"Q Are there any other scars or disfigurement observable to you?

"A There is a small scar just below the left zygomatic arch about half an inch in length.

"Q Can you describe that for us in layman's terms?

"A Around the left cheek half an inch in length barely visible at a distance of three feet and I can't discern any other scars."

■ We note that A.R.S. § 23–1044, subsec. B, which is the statute dealing with scheduled injuries, provides a method of computation for the amount of compensation in every case except paragraph 22. In the scheduled cases there is no need to prove loss of earning capacity as in the unscheduled injury cases of A.R.S. § 23–1044, subsec. C. Williams v. Industrial Commission of Arizona, 73 Ariz. 57, 237 P.2d 471 (1951). Referring to scheduled payments, Larson on compensation states:

"These payments are not dependent on actual wage loss. Evidence that claimant has been regularly employed at greater earnings than before is completely immaterial.

"This is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—the benefits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect upon earning capacity is a conclusively presumed one, based on observed probabilities in many similar cases, instead of a specifically proved one, based on the individual's actual wage-loss experience." Larson's Workmen's Compensation Law, Vol. 2, Sec. 58.10, pp. 42, 43 (1952).

■ The statement that compensation is based on probabilities of loss is true as to all except A.R.S. § 23–1044, subsec. B, par. 22, where no set compensation is provided. Thus, we have a situation where the legislature placed facial disfigurement within a section giving benefits of presumed loss of earning capacity and setting a maximum payment, while leaving the exact amount of compensation to the discretion of the Industrial Commission, providing only that it "allow such sum for compensation thereof

as it deems just, in accordance with the proof submitted, * * *." The fact that presumed loss eliminates the burden of proving actual present loss as a prerequisite to compensation does not mean that earning capacity is irrelevant. We hold, therefore, that although actual loss of earning capacity need not be proven in determining compensation under A.R.S. § 23–1044, subsec. B, par. 22, the Industrial Commission must consider facts in evidence which weigh on long-term loss of earning capacity.

■ In the instant case a first review of the cold record would lead one to believe that the referee and the Industrial Commission relied solely on an arbitrary method of determining compensation. However, we must presume the Commission performed its duty to consider all the relevant evidence, Wilson v. Wilson, 1 Ariz.App. 77, 399 P.2d 698 (1965), and a second review of the record adequately supports that presumption. The referee's report states:

"This referee has considered in detail the entire file, including the transcript of the formal hearing of March 28, 1968, together with the photographs submitted in evidence at said hearing as applicant's exhibits 1, 2, and 3, and referee's exhibits 4, 5, 6, and 7. It is apparent that the scarring is much more prominent when the right side of the face is viewed; much less so when looking directly at the applicant and very little discernible when the left side of the face is viewed alone."

He evidently concluded there were no facts presented which showed that claimant's scars would affect his earning capacity to any measurable extent greater than it would that of an average person, and in an attempt to be uniform, not arbitrary, applied the test of visual observation of disfigurement. We must concur in the referee's determination that claimant's position was not unusual, especially in light of the fact that at the time of injury claimant was working as a field test salesman and it is out of that employment that his claim arises. His employment as a part-time actor before injury being unrelated to his

employment as a salesman was properly not considered in the attempt to compensate for probable loss of earning capacity. Wesolowski v. Industrial Commission, 99 Ariz. 4, 405 P.2d 887 (1965). In addition, although we do not condone the use of a scale of visual observation we cannot say that under these facts where unusual conditions did not exist, the ultimate use of such a scale was arbitrary and capricious.

Affirmed.

STEVENS and CAMERON, JJ., concur.