847 P.2d 595

Jimmy Wayne **WILEY**,
**Petitioner/Respondent
Employee,**

**Sam Trujillo and Mary Jane Trujillo,
Petitioner/Respondent Employers,**

v.

The **INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,**

**Casper Baca Rodeo Company,
Respondent Employer,**

**No Insurance Section/Special Fund,
Respondent Party in Interest.**

**No. CV–91–0249–PR.**

Supreme Court of Arizona,
En Banc.

March 18, 1993.

Dee–Dee Samet, P.C. by Dee–Dee Samet, Tucson, for petitioner/respondent employee.

Kimble, Gothreau & Nelson, P.C. by Frank W. Frey, Tucson, for petitioner/respondent employers.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Miller, Pitt & McAnally, P.C. by Armando Rivera, Tucson, for respondent employer.

Kent M. Struckmeyer, Asst. Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent/real party in interest.

Tretschok, McNamara & Clymer, P.C. by Brian I. Clymer, Tucson, for amicus curiae.

## AMENDED OPINION

Memorandum Decision of the Court of Appeals, Division Two, filed April 25, 1991, vacated in part

FELDMAN, Chief Justice.

We granted review in these consolidated workers' compensation cases to re-examine

the question of whether, for purposes of determining disability benefits, a worker's average monthly wage includes wages from concurrent dissimilar employment. *See* Ariz.R.Civ.App.P. 23(c)(4). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24, and Ariz.R.Civ. App.P. 23.

## FACTS AND PROCEDURAL HISTORY

The Casper Baca Rodeo Company ("Baca") entered into a contract with the Greenlee County Fair and Rodeo Association ("Association") to stage the Association's annual rodeo at Duncan, Arizona in September 1988. Under the contract, Baca agreed to provide all rodeo stock and chute help. Baca, who only had bucking stock, entered into a subcontract to have Sam Trujillo provide all timed-event stock for the rodeo.[1] Trujillo, in turn, hired Jimmy Wiley as a rodeo assistant. While working at the rodeo, Wiley suffered a significant injury to his right leg resulting in a temporary total and a permanent partial disability.

Following his injury, Wiley filed workers' compensation claims against both Baca and Trujillo. Neither Baca nor Trujillo had procured workers' compensation insurance and the No Insurance Section/Special Fund of the Industrial Commission of Arizona ("Commission") processed the claims. *See* A.R.S. §§ 23–907, 23–1065. The administrative law judge ("ALJ") found that Baca was not Wiley's statutory employer because Baca had delegated to Trujillo his right to control Wiley's employment. The ALJ found that Trujillo was responsible for Wiley's medical, surgical, and hospital benefits as well as disability benefits.

Trujillo paid Wiley a total of $80 for two days of work as a rodeo assistant. Prior to the injury, Wiley earned $2,175 per month as a full-time electrician. In addition, he worked as a football referee, officiating three games and receiving $22.80 per game, including travel reimbursement. In determining Wiley's pre-injury average

monthly wage, however, the ALJ refused to include Wiley's income as an electrician or referee because that work was dissimilar to his work as a rodeo assistant. The ALJ found that Wiley had received a total of $80 in wages as a rodeo assistant in the year prior to his injury. Thus, the average monthly wage used to calculate Wiley's disability benefits was $6.67. Accordingly, Wiley's award for temporary total disability was sixty-six and two-thirds percent of $6.67 or $4.45 per month.

Wiley and Trujillo challenged the Commission's awards in special actions before the court of appeals. That court consolidated the special actions, set aside the finding that Baca was not Wiley's statutory employer, and affirmed the average monthly wage determination. *Wiley v. Trujillo*, Nos. 2 CA–IC 90–0054, –0055, –0057 (Ariz. Ct.App. Apr. 25, 1991) (mem. dec.). Wiley petitioned this court to review the court of appeals' decision affirming the average monthly wage determination.[2] We granted review to examine the following issues:

1. Are our previous decisions unfair and discriminatory by refusing to combine wages from concurrent "dissimilar" employment in setting an injured employee's average monthly wage while allowing the combination of wages from concurrent "similar" employment?

2. Should the cases refusing to combine wages from concurrent "dissimilar" employment be overruled?

Essentially, the issue before us is whether Wiley's total wages from his various jobs should be aggregated in computing his average monthly wage (and thus in determining his lost earning capacity and resulting compensation) or whether, because his jobs were dissimilar, only the income from the single job in which he was working at the time he was injured should be considered.

## DISCUSSION

A. The Concurrent Dissimilar Employment Rule

Under the Arizona Workers' Compensation Act ("Act"), A.R.S. §§ 23–901 to 23–

---

1. Timed-event stock includes calves and steers for roping as well as bulldogging steers.

2. No party sought review of the court of appeals' statutory employer determination. Accordingly, that issue is not before us.

1091, a claimant's average monthly wage is defined by statute. *See* A.R.S. § 23–1041. The ALJ and the court of appeals relied on our construction of this statutory provision in *Wesolowski v. Industrial Comm'n*, 99 Ariz. 4, 405 P.2d 887 (1965), and *Sanchez v. Industrial Comm'n*, 96 Ariz. 19, 391 P.2d 579 (1964), to determine Wiley's average monthly wage. Thus, we begin our analysis with the applicable statutory language and its judicial construction.

Under the Act, benefits are based on a claimant's "average monthly wage at the time of injury." A.R.S. § 23–1041(A). The average monthly wage determination directly affects the amount of benefits a claimant receives. *See generally* A.R.S. §§ 23–1044; 23–1045. "Monthly wage" is defined as "the average wage paid during and over the month in which the employee is killed or injured." A.R.S. § 23–1041(D); *see also* A.R.S. § 23–1041(B) (monthly wage for short-term employment); A.R.S. § 23–1042 (monthly wage for permanently incapacitated minors). The statutory definition of monthly wage has remained constant—virtually to the letter—from the time it first appeared in the Act. *See, e.g.*, A.R.S. § 23–1041(D); Ariz.Rev.Stat.Ann. § 56–952 (1939); A.R.S. § 1438 (1928); 1939 Ariz.Sess.Laws ch. 28, § 6; 1933 Ariz. Sess.Laws, 1st S.S. ch. 11, § 6; 1925 Ariz. Sess.Laws ch. 83, § 70. However, in determining the average monthly wage of claimants who hold more than one job, judicial construction of this statutory phrase has fluctuated.

### 1. *Prior Judicial Construction*

Our construction of the applicable statutory language has been both confusing and contradictory. We first addressed the issue of concurrent employment in *Butler v. Industrial Comm'n*, 50 Ariz. 516, 73 P.2d 703 (1937). In *Butler*, the claimant was injured while working for two employers and while travelling from one employer to the other. *Id.* at 517–19, 73 P.2d at 703–05. The claimant worked as a groundskeeper-night watchman and a parking attendant, and both employers were primarily controlled and owned by the same individual. *Id.* at 517–18, 73 P.2d at 703–04. In light

of those unique facts, we held that the average monthly wage determination should be based on the claimant's combined wages from both employers—a holding constituting "the reasonable, logical, and just construction of the nature of [claimant's] employment." *Id.* at 525, 73 P.2d at 706.

In *Wells v. Industrial Comm'n*, 63 Ariz. 264, 161 P.2d 113 (1945), we first squarely addressed the issue presented in this case. The claimant in *Wells* worked for two unrelated employers as a salesperson and a painter, and the Commission used claimant's wages from both employers to determine his average monthly wage. *Id.* at 265, 161 P.2d at 114–13. We construed *Butler* as holding "that where a workman is employed by two or more employers, and is injured while in the employ of one, he is entitled to have his wages calculated on the total wages received." *Wells*, 63 Ariz. at 267, 161 P.2d at 114. We stated that the applicable statutory language and the purposes of the Act indicated that all wages should be combined, *id.* at 269–70, 161 P.2d at 115–16, and noted that other courts construing similar statutory provisions "held that the proper wage is the total received from all employers." *Id.* at 271, 161 P.2d at 116 (citing cases). Thus, we held that wages from both employers should be combined because that result reasonably represented claimant's monthly earning capacity from all employment at the time of injury. *Id.* at 269, 161 P.2d at 115. "Any other construction of the statute would result in great injustice and lead to absurdities." *Id.* at 271, 161 P.2d at 116.

*Wells*, however, was short-lived. In *Faulkner v. Industrial Comm'n*, 71 Ariz. 76, 223 P.2d 905 (1950), the court limited *Wells* and *Butler*. In *Faulkner*, the claimant worked primarily for the United States Veterans Administration but had been injured while working at a race track. *Faulkner*, 71 Ariz. at 77, 223 P.2d at 905. After finding that the Veterans Administration was not covered by the Act, the court affirmed the Commission's decision basing benefits solely on claimant's race track wages. *Id.* at 78–79, 223 P.2d at

905–06. The court reasoned that any other ruling would prevent the Commission from receiving premiums to the full extent of insurance coverage and would jeopardize the solvency of the compensation fund. *Id.* at 78, 223 P.2d at 906. Thus, *Faulkner* limited *Wells* and *Butler* to claims, as in the present case, where the Act covers both employers. *Faulkner,* 71 Ariz. at 78, 223 P.2d at 906.

The death knell came for *Wells* and *Butler* in a pair of cases decided in the mid-1960s. In *Sanchez v. Industrial Comm'n,* 96 Ariz. 19, 391 P.2d 579 (1964), the claimant, who also worked part-time as a musician, was injured while working as a miner. *Id.* at 20, 391 P.2d at 580. The specific issue decided in *Sanchez* was whether the computation of claimant's post-injury loss of earning capacity should have considered his pre-injury earnings as a musician. *Id.* at 23, 391 P.2d at 582. After discussing *Faulkner,* the court, in a conclusory manner, stated:

> *Faulkner* is consistent with the usual rule, sometimes adopted into statute, that *where employments are dissimilar the earnings will not be combined.* Any inference to the contrary arising out of *Wells v. Industrial Commission,* 63 Ariz. 264, 161 P.2d 113, is specifically overruled.
>
> The Commission could not, as a basis for compensation, have combined the earnings prior to the injury of the dissimilar employments of miner and musician.

*Sanchez,* 96 Ariz. at 23, 391 P.2d at 582 (emphasis added) (citations omitted). The next year, in *Wesolowski v. Industrial Comm'n,* 99 Ariz. 4, 405 P.2d 887 (1965), again without discussion, the court merely cited *Sanchez* and stated that wages from concurrent dissimilar employment could not be aggregated. *Wesolowski,* 99 Ariz. at 6, 405 P.2d at 888. The issue was decided. With little discussion and no statutory analysis, *Sanchez* and *Wesolowski* explicitly overruled *Wells* and either implicitly overruled *Butler* or limited that case to its facts.

We have not revisited the concurrent dissimilar employment rule in the nearly thirty years following *Sanchez* and *Wesolowski.* During this time, although these two cases have been criticized, *see Wiley,* mem. dec. at 4–5; *Wheeler v. Industrial Comm'n,* 22 Ariz.App. 488, 490, 528 P.2d 874, 876 (1975), wages from concurrent dissimilar employment have not been combined in determining the applicable average monthly wage, *see, e.g., Scott v. Industrial Comm'n,* 11 Ariz.App. 20, 23–24, 461 P.2d 499, 502–03 (1969); *Riggins v. Industrial Comm'n,* 9 Ariz.App. 469, 472, 453 P.2d 980, 983 (1969); *Mickelson v. Industrial Comm'n,* 7 Ariz.App. 182, 192, 437 P.2d 666, 676 (1968). During this same period, however, wages from concurrent *similar* employment have been aggregated in determining the pre-injury average monthly wage. *See Floyd Hartshorn Plastering Co. v. Industrial Comm'n,* 16 Ariz.App. 498, 500, 506–08, 494 P.2d 398, 400, 406–08 (1972). *Wiley* challenges this dichotomy.

*Wiley* argues that we should overrule *Sanchez* and *Wesolowski* and combine wages from concurrent dissimilar employment. *Wiley* makes two arguments: (1) as a matter of statutory construction, the Act does not distinguish between wages received from similar or dissimilar employment and all wages should be combined in determining the applicable average monthly wage, and (2) combining wages when employment is similar but refusing to combine wages when employment is dissimilar deprives *Wiley* of his rights under the United States and Arizona Constitutions. Because resolution of the first argument may obviate our need to address *Wiley's* constitutional argument, we begin with the statutory question. *See State v. Yslas,* 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984).

## 2. *Statutory Interpretation*

We begin, as we must, with the express language of the Act. Monthly wage "means the average wage paid during and over the month in which the employee is killed or injured." A.R.S. § 23–1041(D). Under the definition of "monthly wage," the wage paid clearly can come from more than one source. *See Floyd Hartshorn Plastering Co.,* 16 Ariz.App. at 499–500, 506–08, 494 P.2d at 399–400, 406–

08 (combining wages of claimant who worked as a full-time plasterer and part-time plasterer for two different employers); *cf. Senor T's Restaurant v. Industrial Comm'n,* 131 Ariz. 360, 362–65, 641 P.2d 848, 850–53 (1982) (combining tips received by cocktail waitress and bartender with wages from employer in determining average monthly wage); *Scott v. Industrial Comm'n,* 122 Ariz. 169, 170–73, 593 P.2d 919, 920–23 (Ct.App.1978) (combining tips received by taxicab driver with wages from employer in determining average monthly wage). If wages from concurrent *similar* employment paid by different employers should be combined in determining a claimant's average monthly wage, why should wages from concurrent dissimilar employment be treated differently? Again we turn to the applicable statutory language.

The language of A.R.S. §§ 23–1041(A) and (D) does not expressly address whether wages from concurrent dissimilar employment should be combined in making the monthly wage determination. Indeed, the non-specific language of these provisions—with claims being based on the "monthly wage" and "average wage paid"—suggests little about whether all wages (i.e., from similar as well as dissimilar employment) should be combined. Thus, as to the issue of concurrent dissimilar employment, we find that these subsections are, at the very least, non-specific, ambiguous, and open to interpretation. *See, e.g., State v. Sweet,* 143 Ariz. 266, 269–70, 693 P.2d 921, 924–25 (1985); *Senor T's Restaurant,* 131 Ariz. at 362–63, 641 P.2d at 850–51; *State v. Buchanan,* 110 Ariz. 285, 287, 518 P.2d 108, 110 (1974).[3]

■ "Statutes which are ambiguous must be construed in view of the purposes they are intended to accomplish and the evils they are designed to remedy." *Senor T's Restaurant,* 131 Ariz. at 363, 641 P.2d at 851 (citing *State v. Berry,* 101 Ariz. 310, 312, 419 P.2d 337, 339 (1966)); *accord St. Paul Fire & Marine Ins. v. Gilmore,* 168 Ariz. 159, 164, 812 P.2d 977, 982 (1991). Thus, we must look to the "legislative goals that can be adduced from the body of legislation in question." *Dietz v. General Elec. Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991) (citing cases).

The Arizona Constitution commands that the Act be a "just and humane compensation law" and relieve workers and their dependents from "burdensome, expensive and litigious remedies." Ariz. Const. art. 18, § 8. As a matter of statutory interpretation, we have long held that

[t]he goal of the Act is to determine a realistic pre-injury wage base which can serve as a standard of comparison with the post-injury earning capacity of the injured worker; the emphasis in setting a worker's average monthly wage is on

**3.** Before the court of appeals, Trujillo argued that A.R.S. §§ 23–1041(A) and (D) governed this case. Before this court, however, Trujillo argues that A.R.S. § 23–1041(B) also mandates the concurrent dissimilar employment rule. In setting forth guidelines for determining the average monthly wage of short-term employees, subsection (B) indicates that similar employment may be considered.

If the injured or killed employee has not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such amount as, having regard to the previous wage of the injured employee or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident.

A.R.S. § 23–1041(B). Although the statute suggests a comparison with other individuals having a similar employment profile, it does not mandate that wages from concurrent dissimilar employment cannot be used to determine the claimant's average monthly wage.

To read subsection (B) as requiring the dissimilar employment rule would require us to imply the phrase "of a similar type" after the second "employment" in that subsection or to replace the second "employment" with "specific job." Naturally, we are reluctant to rewrite the statute—particularly when the text as written can be read as directing that all wages (both similar and dissimilar) should be included in calculating a claimant's average monthly wage. *See Wells,* 63 Ariz. at 269–70, 161 P.2d at 115. We cannot revise the express language of the subsection and accordingly find that A.R.S. § 23–1041(B) also is non-specific as to wages from concurrent dissimilar employment.

what the employee *has actually earned* for his labors.

*Senor T's Restaurant*, 131 Ariz. at 363, 641 P.2d at 851 (emphasis added) (citing *Faith Evangelical Lutheran Church v. Industrial Comm'n*, 119 Ariz. 506, 507, 581 P.2d 1156, 1157 (Ct.App.1978)); *see also English v. Industrial Comm'n*, 73 Ariz. 86, 89, 237 P.2d 815, 817 (1951). Primary purposes of the Act include compensating claimants "for lost earning capacity," *Senor T's Restaurant*, 131 Ariz. at 363, 641 P.2d at 851, preventing claimants from becoming public charges during any period of disability, *id.*, relieving employees of the burden of compensable injuries, *Marriott Corp. v. Industrial Comm'n*, 147 Ariz. 116, 121, 708 P.2d 1307, 1312 (1985), and diminishing litigation between claimants and employers or insurance carriers, *id.* For six decades, we have endeavored to construe the Act broadly to effectuate these underlying purposes. *See, e.g., United States Fidelity & Guar. Co. v. Industrial Comm'n*, 42 Ariz. 422, 430, 26 P.2d 1012, 1015 (1933).

### 3. The Dissimilar Employment Rule and the Purposes of the Act

■ There can be no doubt that combining wages from concurrent dissimilar employment in determining the applicable average monthly wage furthers the purposes of compensating claimants for their real loss of earning capacity [4] and relieving employees of the burden caused by compensable injuries. Combining all wages that a claimant was receiving before the injury, from similar as well as dissimilar employment, focuses on reality—what the employee actually earned, *see Senor T's Restaurant*, 131 Ariz. at 363, 641 P.2d at 851—not on some artificial distinction that the language of the Act does not compel.

The fortuity accompanying the dissimilar employment rule is plainly unfair to the employee. In *Wells*, we hypothesized, and sought to prevent, such unfairness.

Where an employee is working for several different employers and is injured, in order that he may be reasonably compensated for the loss of his earning powers, his total wages must be taken into consideration. Any other construction of the statute would result in great injustice and lead to absurdities. For instance, a skilled employee might be regularly employed during different periods of a month in separate occupations on a part-time basis. If he happened to be injured in the employment that paid him the least amount of money during the month, and his wages from the other employments could not be considered, he would receive entirely inadequate compensation which would not represent his earning capacity.

*Wells*, 63 Ariz. at 271, 161 P.2d at 116. These concerns are as valid today as they were nearly fifty years ago when *Wells* was decided—particularly when many workers are compelled, for a variety of reasons, to hold more than one job. The purposes of the Act, and the constitution that commands it, Ariz. Const. art. 18, § 8, are not served by a rule placing the most industrious or needy employees at serious economic risk simply because they choose or are compelled to obtain part-time employment in addition to their regular jobs. Simply put, the Act should not be construed to penalize workers who support themselves and their families by holding more than one job.

Even administering the dissimilar employment rule has proven problematic. Although sounding like a simple doctrine, it is difficult to apply. Determining when employment is dissimilar has spawned much litigation, not only in Arizona [5] but also in other jurisdictions where the rule has been

---

4. Subject to the statutory cap limiting the maximum average monthly wage. *See* A.R.S. § 23–1041(E).

5. *See, e.g., Wiley*, mem. dec. at 3–5; *Wheeler*, 22 Ariz.App. at 489–90, 528 P.2d at 875–76; *Floyd*

*Hartshorn Plastering Co.*, 16 Ariz.App. at 506–08, 494 P.2d at 406–08; *Scott*, 11 Ariz.App. at 23–24, 461 P.2d at 502–03; *Riggins*, 9 Ariz.App. at 472, 453 P.2d at 983; *Mickelson*, 7 Ariz.App. at 192, 437 P.2d at 676.

applied [6]—often with irreconcilable results.[7] Clearly the rule does not diminish litigation between the claimant and the employer—one purpose underlying the Act. *See Marriott Corp.*, 147 Ariz. at 121, 708 P.2d at 1312. Thus, it cannot be said that administrative convenience favors the dissimilar employment rule.

 Trujillo argues that it may appear unfair to burden one employer (and in many cases an insurance carrier) [8] with liability not directly in proportion to the specific wages and insurance premiums paid. This argument, however, applies with equal force to wages from concurrent *similar* employment that clearly can be combined. *Floyd Hartshorn Plastering Co.*, 16 Ariz. App. at 506–08, 494 P.2d at 406–08; *cf. Senor T's Restaurant*, 131 Ariz. at 362–65, 641 P.2d at 850–53 (including tips in average monthly wage); *Scott v. Industrial Comm'n*, 122 Ariz. 169, 170–73, 593 P.2d 919, 920–23 (Ct.App.1978) (same). Furthermore, in this instance, fairness to the employee and fairness to the employer or carrier are not opposite sides of the same coin.

To this one employee, this one loss is everything—[the employee] has nothing against which to offset it. To the employer, and even more to the carrier, this is just one case among many. The rule operates impartially in both directions. Today this employer-carrier may be saddled with a slight extra cost; tomorrow the positions may be reversed, and the employer-carrier will be completely relieved of the cost of an injury to one of its employees in a concurrent-employment situation, when it happens to be the other employment in which the injury occurs. This is the essence of the concept of spreading the risk in a system like workmen's compensation.

2 Arthur Larson, *The Law of Workmen's Compensation* § 60.31(c), at 10–751 (1992) (footnote omitted) (hereinafter "Larson, *Workmen's Compensation*"); [9] *see also Wheeler*, 22 Ariz.App. at 490, 528 P.2d at 876 ("to hold the employer liable only for the wages he has paid results in an injustice to the employee and seems contrary to the intent and the spirit of the [Act].").

---

6. *See* 2 Arthur Larson, *The Law of Workmen's Compensation* § 60.31(b), at 10–744 to 746 (1992) (citing cases).

7. *Compare Floyd Hartshorn Plastering Co.*, 16 Ariz.App. at 500, 506–08, 494 P.2d at 400, 406–08 (combining wages as part-time plasterer and full-time plasterer) *with Riggins*, 9 Ariz.App. at 472, 453 P.2d at 983 (refusing to combine wages as part-time employee for bottling company and wages as full-time employee for laundry even though jobs involved similar duties); *compare Walla v. Streigel*, 2 A.D.2d 914, 156 N.Y.S.2d 457, 458 (1956) (combining wages from janitorial work and domestic housework) *with Rowland v. 1201 Park Ave. Corp.*, 3 A.D.2d 878, 161 N.Y.S.2d 650, 651–52 (1957) (refusing to combine wages from part-time janitorial work and full-time maintenance work); *compare McDowell v. Flatbush Congregational Church*, 252 A.D. 799, 298 N.Y.S. 892, 893 (1937) (combining wages as dietitian and as assistant housekeeper), *aff'd*, 277 N.Y. 536, 13 N.E.2d 462 (1938) *with Sankal v. Park Ave. Synagogue*, 53 A.D.2d 927, 385 N.Y.S.2d 198, 199–200 (1976) (refusing to combine wages from part-time work as youth activities director and wages from work as school principal); *compare St. Paul Fire & Marine Ins. Co. v. Walters*, 141 Ga.App. 579, 234 S.E.2d 157, 158 (1977) (combining wages from work as retail sales clerk and hospital clerk) *with Johnson v. Phaefflin*, 136 Conn. 107, 68

A.2d 687, 688–89 (1949) (refusing to combine wages from work as utility lineman with wages from work as tree-trimmer).

8. Because neither Trujillo nor Baca procured workers' compensation insurance as required by law, A.R.S. § 23–902, no carrier is a party to this case. Trujillo argues that this failure to procure insurance should prevent us from determining the ongoing validity of the dissimilar employment rule as no carrier is a party to this case. We flatly reject this argument. We cannot shirk our duty to decide disputes between litigants even though other entities may have a direct or indirect interest in the resolution of the issues. Furthermore, non-parties can present their arguments to the court via amicus appearances, *see* Ariz.R.Civ.App.P. 16, a mechanism utilized by an interested non-party in this case.

9. Indeed, in this case, if Wiley had lost rather than injured his leg, he would have been entitled to 55% of his average monthly wage for 50 months. *See* A.R.S. § 23–1044(B)(15). Under the dissimilar employment rule, Wiley's average monthly wage was $6.67. Fifty-five percent of $6.67 would have entitled Wiley to benefits of $3.67 per month or a total of $183.43—received in payments of $3.67 per month over a period of more than four years—for the complete loss of a leg.

Nor is the idea of putting the entire risk on one of several employers a new concept under Arizona workers' compensation law. For example, a claimant's last employer incurs full liability for occupational diseases. A.R.S. § 23–901.02. This certainly represents "a far more extreme case of disproportion between premium and liability, yet it is accepted as a defensible compromise on the theory that employers and carriers will on the whole come out even in time." 2 Larson, *Workmen's Compensation* § 60.31(c), at 10–752. Another example is the successive injury rule. *See Morrison–Knudsen Co. v. Industrial Comm'n,* 115 Ariz. 492, 495, 566 P.2d 293, 296 (1977) (subsequent employer solely responsible for entire result of aggravation of injury first suffered in prior employment).

In sum, there are substantial and persuasive reasons to reject the dissimilar employment rule, and we find no statutory language or persuasive policy reason to retain it. Thus, as a matter of first impression, we would reject the concurrent dissimilar employment rule. However, because we do have prior, contrary case law on the subject, we must determine whether the logical underpinnings of those prior decisions still withstand scrutiny. *See Ontiveros v. Borak,* 136 Ariz. 500, 504–05, 667 P.2d 200, 204–05 (1983); *Fernandez v. Romo,* 132 Ariz. 447, 449, 646 P.2d 878, 880 (1982); *see also State Tax Comm'n v. Ryan–Evans Drug Stores,* 89 Ariz. 18, 20, 357 P.2d 607, 608 (1960) ("The true purpose of the doctrine of stare decisis is thwarted when precedent is unrealistic or based on poor reasoning or expediency.").

### 4. *The Effect of Prior Case Law*

■ The reasoning of *Faulkner* (the foundation for *Sanchez* and *Wesolowski*) has been questioned by the court of appeals. *See Wheeler,* 22 Ariz.App. at 489, 528 P.2d at 875; *Floyd Hartshorn Plastering Co.,* 16 Ariz.App. at 507 & n. 8, 494 P.2d at 407 & n. 8. It has been questioned by courts from other states, *see First Virginia Banks, Inc. v. McNeil,* 8 Va.App.

342, 381 S.E.2d 357, 358 (1989); *St. Paul Fire & Marine Ins. Co. v. Walters,* 141 Ga.App. 579, 234 S.E.2d 157, 158–59 (1977), and by the authoritative commentator in the field, *see* 2 Larson, *Workmen's Compensation* § 60.32. *Faulkner* rests on a stated concern that allowing claims based on an employee's wages received from an *employer not covered by the Act* might jeopardize the solvency of the compensation fund. *See Faulkner,* 71 Ariz. at 78, 223 P.2d at 906. Professor Larson questions "whether this *rather fanciful possibility* should weigh heavier in the scales than the underlying purpose of compensation law, which is to estimate accurately the claimant's earning capacity and provide compensation bearing a proper relation to it." 2 Larson, *Workmen's Compensation* § 60.32, at 10–766 (emphasis added). We note, also, that Arizona's concurrent *similar* employment rule, which allows aggregation, has not produced untoward consequences.

Notwithstanding any criticism of *Faulkner,* its holding (that wages received from an employer *not covered by the Act* must be excluded when making the average monthly wage determination) clearly does not require that wages from concurrent dissimilar employment for covered employers also must be excluded when making the average monthly wage determination. *See American Uniform & Rental Serv. v. Trainer,* 262 So.2d 193, 196 (Fla.1972). Thus, the propriety of using *Faulkner* as a foundation for the concurrent dissimilar employment rule is questionable.

The *Sanchez* court applied *Faulkner* to a totally different factual situation and did so by merely stating that *Faulkner* was "consistent with" a rule that wages from concurrent dissimilar employment should not be combined. Then, without discussion, *Sanchez* summarily adopted the concurrent dissimilar employment rule. *Sanchez,* 96 Ariz. at 23, 391 P.2d at 582. Cases from other jurisdictions were cited, *id.,* many of which are distinguishable or have been repudiated in the years following *Sanchez.* [10]

---

**10.** *Sanchez* cited cases from Connecticut, Flori- da, Michigan, New York, and New Jersey. Con-

*Sanchez* contains no statutory analysis or discussion of the Act's purposes. *See generally Sanchez*, 96 Ariz. at 20–24, 391 P.2d at 580–83. Similarly lacking any analysis, *Wesolowski* merely cites *Sanchez* and sets forth the concurrent dissimilar employment rule. *Wesolowski*, 99 Ariz. at 6, 405 P.2d at 888. Thus, the cases themselves contain neither adequate analysis, persuasive reasoning, nor consideration of the purposes of the Act.

The court of appeals, although properly following *Sanchez* and *Wesolowski*, has questioned whether the dissimilar employment rule is equitable or required by the language of the Act. *See Wiley*, mem. dec. at 4–5; *Wheeler*, 22 Ariz.App. at 490, 528 P.2d at 876. Nationwide, the growing trend is for earnings to be combined regardless of whether the employment was similar. *See* 2 Larson, *Workmen's Compensation* § 60.31(a), at 10–729, 10–732 to 740 & n. 58.1 (citing cases). Professor Larson condemns the dissimilar employment rule in no uncertain terms:

> [It] is unnecessary from the point of view of statutory construction, unsound as a matter of accomplishing the purposes of the legislation, inhumane from the point of view of the claimant, and logically absurd as to the distinctions on which it is based.

*Id.* § 60.31(c), at 10–746. For the reasons described above, we share these concerns about the rule.

■ In light of our "healthy respect for *stare decisis*," *State v. Lara*, 171 Ariz. 282, 285, 830 P.2d 803, 806 (1992), we do not lightly overrule precedent and do so only for compelling reasons, *see, e.g., State v. Salazar*, 173 Ariz. 399, 416, 844 P.2d 566, 583 (1992); *Hedlund v. Sheldon*, 173 Ariz. 143, 144, 840 P.2d 1008, 1009 (1992). Mere

disagreement with those who preceded us, without more, is not an adequate reason to overrule precedent. *See Salazar*, 173 Ariz. at 417, 844 P.2d at 584. While we should and do pay appropriate homage to precedent, we also realize that we are not prisoners of the past. In this case, there are compelling reasons to overrule precedent: (1) the language of the Act does not compel the interpretation reached in previous cases; (2) the interpretation that we overrule did not advance the policies of the Act; (3) the precedent we overrule is not the result of clear analysis or persuasive reasoning; (4) by overruling precedent, we return, in general, to the view of *Wells* which is better supported and reasoned; and (5) the facts of this case demonstrate that the interpretation we overrule today was imprudent and unjust.

The views of the leading commentator in the field and of our own court of appeals verify this conclusion, as do more recent cases from other states. Thus, although recognizing that stare decisis is a formidable constraint, compelling reasons overcome that constraint in this case. When addressing the same issue, the Florida Supreme Court overruled precedent and rejected the concurrent dissimilar employment rule:

> If the injury occurring on the part-time job has disabled the employee from working at his full-time job, his capacity as a wage earner is impaired beyond the limits of his part-time job and his compensation should be based on the combined wages. The purpose of the Act is to compensate for loss of wage earning capacity due to work-connected injury. It is the capacity of the "whole man" not the capacity of the part-time or full-time worker that is involved.

necticut applies the concurrent dissimilar employment rule, although the issue apparently has not been addressed since *Johnson v. Phaefflin*, 136 Conn. 107, 68 A.2d 687 (1949). Florida has rejected the rule by overruling prior precedent, *American Uniform & Rental Serv.*, 262 So.2d 193; Michigan statutorily rejected the rule, *Leizerman v. First Flight Freight Serv.*, 424 Mich. 463, 381 N.W.2d 386, 388–89 & n. 2 (Mich. 1985); New Jersey never combines earnings absent joint concurrent employment, *Tomarchio v.*

*Greenwich*, 75 N.J. 62, 379 A.2d 848, 855–56 (1977); while New York apparently still applies the concurrent dissimilar employment rule, *see Sankal v. Park Ave. Synagogue*, 53 A.D.2d 927, 385 N.Y.S.2d 198, 199–200 (1976). Although not cited in *Sanchez*, we note that several other states have used the concurrent dissimilar employment rule. *See* 2 Larson, *Workmen's Compensation* § 60.31(a), at 10–729 to 732 n. 58 (citing cases).

*American Uniform & Rental Serv.*, 262 So.2d at 194 (overruling in part *J. J. Murphy & Son, Inc. v. Gibbs*, 137 So.2d 553 (Fla.1962)).

We endorse this view. Thus, we join the "substantial and growing minority" of jurisdictions, *see* 2 Larson, *Workmen's Compensation* § 60.31(a), at 10–729, in holding that concurrent wages from both similar and dissimilar employment should be combined in determining a claimant's average monthly wage, *see, e.g., MCM Parking Co. v. District of Columbia Dep't of Employment Servs.*, 510 A.2d 1041, 1041–44 (D.C. 1986); *Catteyson v. Falls Mobile Home Center, Inc.*, 183 Mont. 284, 599 P.2d 341, 342–43 (1979); *Produce v. Industrial Comm'n*, 657 P.2d 1354, 1355–57 (Utah 1983). Accordingly, we expressly overrule the contrary holdings of *Sanchez* and *Wesolowski*.[11]

### B. The Retroactivity of This Decision

■ "In civil actions, Arizona law has always been 'that unless otherwise stated, a court opinion operates retroactively as well as prospectively.'" *Brannigan v. Raybuck*, 136 Ariz. 513, 520, 667 P.2d 213, 220 (1983) (quoting *Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 435, 641 P.2d 1275, 1279 (1982)). We presume retroactive application, *Chevron Chem. Co.*, 131 Ariz. at 436, 641 P.2d at 1280, but balance the following factors in determining whether an opinion should be given prospective application only:

1. Whether the decision establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Whether retroactive application will further or retard operation of the new rule, considering the prior history, purpose, and effect of the new rule;

3. Whether retroactive application will produce substantially inequitable results.

*Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 596, 790 P.2d 242, 251 (1990); *see also Chevron Chem. Co.*, 131 Ariz. at 436, 641 P.2d at 1280 (applying *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)).[12] We have the discretion to decide whether our holding is applied completely or partially retroactively or only prospectively. *See Fain Land & Cattle Co.*, 163 Ariz. at 596, 790 P.2d at 251.

Applying the first of these factors, in light of *Sanchez* and *Wesolowski*, our holding overrules clear precedent. Although these cases had been criticized, they had not been questioned by this court. Thus, this factor weighs against retroactive application.

The purpose of the rule set forth today is to advance the purposes of the Act and compensate claimants for injuries covered by the Act. Retroactive application would protect the interests of claimants who were injured in the past. Furthermore, our holding above does not attempt to alter past actions, a factual impossibility. *Law v. Superior Court*, 157 Ariz. 147, 161, 755 P.2d 1135, 1149 (1988) (supplemental opinion). Accordingly, the second factor weighs in favor of retroactive application. *See Villareal v. State Dep't of Transp.*, 160 Ariz. 474, 480, 774 P.2d 213, 219 (1989).

As to the third factor, to allow all claimants with concurrent dissimilar employment who were injured in the past thirty years to reopen their wage determination would result in substantial inequities. "Numerous defendants would be subject to [additional] claims in cases they previously believed had been finalized." *Villareal*, 160 Ariz. at 480, 774 P.2d at 219. Thus, the third factor weighs against retroactive application.

---

**11.** As noted above, *Faulkner* is not necessarily implicated by this holding. Thus, we explicitly do not determine the continuing validity of *Faulkner* in this case. Furthermore, in light of our ruling, we do not address Wiley's constitutional arguments.

**12.** The parties have not argued, and we do not decide in this case, whether *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), changes the appropriate retroactivity rule in civil cases under Arizona law.

Balancing these factors, we hold that this decision should be applied prospectively. Specifically, our holding that concurrent dissimilar wages should be combined in determining the appropriate average monthly wage applies only to claims in which the award determining the average monthly wage has not become final, but it is inapplicable in cases where the award has become final and the time for appeal of that award has expired. *Cf. Senor T's Restaurant*, 131 Ariz. at 365, 641 P.2d at 853 (construing *Scott*, 122 Ariz. at 171, 593 P.2d at 921). For claims in which there has been a final and unappealed award determining the average monthly wage under the concurrent dissimilar employment rule, the *Sanchez–Wesolowski* rule continues to apply.

## DISPOSITION

The portion of the court of appeals' decision affirming the Commission's average monthly wage determination is vacated. The Commission's award is set aside, and these cases are remanded to the Commission for further proceedings consistent with this opinion.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.